No. 13,717.

CONSOLIDATED ENGINEERING COMPANY, LIMITED, ET ALS. VS. THE TOWN
OF CROWLEY. JOHN BUCK & SON, INTERVENORS.

SYLLABUS.

In an action brought by a town against its contractor for the construction of a
waterworks and electric light plant, to be reimbursed for moneys expended
for repairs to the plant, made subsequently to acceptance by and delivery
to the town after the work had been subjected to contract tests and the
engineer agreed upon by the parties to supervise and test the work had cer-
tified that the work was complete, in accordance with the contract, the
town carries the *onus* of establishing clearly that the expenditures were
for repairs, for which the contractor was liable under his contract.

The claim of the furnisher of supplies to a sub-contractor to be used in the con-
struction of a building to a privilege upon the building, is dependent upon
the supplies furnished being actually used in the building. It is not sufficient
that the sub-contractor, after disposing of the supplies in some other way,
should substitute in replacement thereof other articles of the same kind and
of the same quantity, obtained from other sources.

Where the furnisher of supplies to a sub-contractor for the construction of a
building waives any claim to a privilege upon the building and relies under
the Act of 1844, upon a right upon the price due by the owner to the con-
tractor, he must comply with the conditions of that statute and serve an
"attested account," as required by its terms. The recording of an "attested
account" in the recorder's office is not the equivalent for the purposes of a
right upon the fund to the service upon the proper party of an attested
account. It does not, for this purpose, convey constructive notice.

A PPEAL from the Eighteenth Judicial District, Parish of Acadia
Dupre, J.

*Philip S. Pugh* and *Clegg & Quintero* for Plaintiffs, Appellees.

*Thomas R. Smith,* City Attorney (*Philip J. Chappuis,* of Counsel),
for Defendant, Appellant.

*Cline & Cline* for Intervenors, Appellees.

STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. The Consolidated Engineering Company and J. A.
Muir and Joseph Fromherz, sued the defendant town for the sum of

six thousand two hundred and five dollars and five cents as being balance due to them under a contract which was made between the Consolidated Engineering Company and the Town of Crowley on the 27th of November, 1897, for the erection of electric lights and water works in said town, in accordance with certain plans and specifications agreed upon. Plaintiff alleged the total price agreed upon for performance of the work to be performed by the company was twenty-seven thousand and fifty dollars. That the Consolidated Engineering Company had, in all respects, complied with its contract and had delivered the electric light and water works plant to the defendant, which had approved of, accepted and used the same. That notwithstanding said facts the defendant refused to pay the said balance due. That by virtue of an agreement made between the Consolidated Engineering Company and J. A. Muir and Joseph Fromherz, and the partnership of Muir and Fromherz, the latter were interested in said contract to the extent of being entitled to receive one-half of the said balance of six thousand two hundred and five dollars and five cents, and were entitled to become parties to the suit. That the City Council of the town of Crowley had taken notice of said agreement between the company and Muir & Fromherz and were bound by it. Judgment was prayed for in accordance with the averments of the petition.

The defendant first pleaded a general denial. Further answering it admitted that it had entered into a written contract with the Consolidated Engineering Company, a copy of which for greater certainty it annexed to its answer. It alleged that that company bound itself to furnish all the materials, supplies, tools and labor necessary for and incident to the construction of a system of water works and electric lights and to furnish, construct and erect the said system in strict and full compliance with the plans and specifications on file in the office of the Mayor and the ordinances of the town of Crowley of July 5th, 1897, September 4th, 1897, September 10th, 1897, November 27th, 1897, as well as in accordance with the proposal submitted by the said company on August 31st, 1897, for the construction of said system.

That the company by said contract bound itself to complete the said plant in readiness for successful operation on or before April 27th, 1898, and agreed in case it should not have completed said system by that date to, *ipso facto,* forfeit to the town twenty dollars for each day of delay thereafter, and agreed that the aggregate amount thus forfeited should be retained out of the contract price. That to secure its

faithful performance of the contract the Engineering Company furnished it a bond for the sum of thirteen thousand five hundred and twenty-five dollars, signed by the firm of Muir & Fromherz jointly and severally as sureties. That the company bound itself to construct the systems in a thoroughly first-class manner as to design, material and workmanship, and to thoroughly furnish and complete the same in perfect readiness for operation, any omissions necessary thereto in the specifications to the contrary notwithstanding. Defendant set out specially certain portions of the work which the contractor had agreed to do. Defendant alleged that the company had obligated itself to maintain the said systems in perfect order and repair for a period of one year from completion, except the ordinary and legitimate wear and tear, and except also the result of accidents and circumstances for which it might not be accountable nor contributory, and it also bound itself to be responsible and liable during the period of one year for defects, injuries or damages to any portions of the said systems, due to clearly established defects, imperfections or deficiencies in any portion of the work contracted for by it. Defendant averred that it had agreed to pay to the contractor in consideration of its complete and faithful compliance of its contract the sum of twenty-seven thousand and fifty dollars, partly in negotiable bonds of the town and partly in cash in the manner and at the times provided for by the contract; that in consideration of certain unearned interest in the said bonds the contractor deducted from the said contract price the sum of one hundred and five dollars, thereby leaving the contract price as fixed by the contract to be the sum of twenty-six thousand nine hundred and forty-five dollars, as that to be paid by the town; that twenty-one thousand dollars of the said price were to be represented by bonds, the avails of which were to be paid to the contractor at certain times, and the balance, that is five thousand nine hundred and forty-five dollars in cash, at certain times as agreed on between the parties to the contract; that during the progress of the construction an agreement was entered into by which on account of certain changes and modifications in the manner of constructing and furnishing the wells the contractor agreed to deduct from the contract price the further sum of seventy-five dollars. Defendant averred that after a delay of 130 days following the 27th of April, 1898, the contractor completed the plant which was at the time of the answer being used and operated by the town, but that the plant was not constructed in a proper and workmanlike manner and in

accordance with said contract; that although it appeared from the minutes of a session of the Town Council, held on September 6th, ˙1898, that upon the recommendation of the "City Engineer" the water work and electric light plant was on that day accepted, still the Mayor and Council were entirely ignorant as to whether the company had complied with the contract and constructed the systems in proper and workmanlike manner; that the term "City Engineer" used in the said minutes referred to the engineer provided for in the said specifications, the town having then no "City Engineer;" defendant averred that shortly after September 6th, 1898, numerous defects and deficiencies in the plant which it specified, disclosed themselves, some of them of an extremely serious character, and some of them so radical as to render the particular portions which they affected utterly unserviceable; that these defects were not the result of ordinary and legitimate wear and tear or· of accidents and circumstances for which the contractor was not accountable or contributory, but resulted solely from the failure of the contractor to comply with his contract in furnishing first-class material and doing the said work in a proper and workmanlike manner, and that the recommendation on the part of the engineer that the said plant be accepted by the Council, resulted from error and palpable mistake on his part, or from fraud or from collusion between the said engineer and the contractor, in the absence of which recommendation the town would not then have accepted the work.

That it repeatedly called upon the contractor and his surety to come forward and comply with the contract to maintain the said systems in good order and repair and to remedy the defects therein appearing, as the contractor had bound itself, but that they failed to comply with said notices and demands and the town was compelled to have the work done at an expenditure of fifteen hundred and eighty-two dollars and ninety-seven cents for materials and workmanship.

Respondent averred that W. B. Mathews and James Christian undertook to repair the said systems and rendered services in placing the same in the order in which they were at the time of the filing of their answer, and these parties claimed for their services the sum of one thousand dollars. That said work was done at the request of James E. Barry, the Mayor of the town, who, acting according to what to him seemed the best for the interest of the town in view of the refusal of the contractor and his sureties to comply with their contract, agreed to pay them said amount.

Respondent averred that in compliance with its obligations it had paid to the contractor, long before the commencement of its suit, the avails of twenty-one thousand and fifty-five dollars, equal to the sum of twenty-one thousand dollars because by the contract the contractor agreed to bear the loss of $945 as discount on the said issue of bonds; that on or about September 6th, 1898, respondent paid to the contractor on account of said contract the sum of $300; that on October 21, 1898, the contractor drew on respondent two drafts in favor of Muir & Fromherz for $447.73 and $626.33, which were paid by it on account of the purchase price. It averred that when the contractor, on September 6, 1898, tendered the said plant for acceptance it was agreed that there should be deducted from the purchase price the sum of $416.82, as part of the forfeit for the delay in completing the said systems, the said sum being the extra salary paid by respondent to the engineer; that after deducting from the net contract price of $26,870 the said payments and the said forfeit aggregating $1789.88, and the full value of said bonds $21,000, there remained due to said contractor a balance of $4080.12. That it having, out of said balance, made expenditures amounting to $1582.97, as stated on repairs and replacement of different articles and in maintaining the plant in good order and repair, it had deducted the amount of said expenditures from the above balance and therefore acknowledged itself to owe said contractor, on account of the contract price, a balance of $2497.15.

That it had not paid over said balance to the company and could not safely pay the same because, under the terms of the contract, the contractor bound itself to deliver the said systems and plants free from all liens, privileges, encumbrances and royalties, which it had failed to do. That various parties claimed to have performed work and other services, and to have supplied materials to the said contractor or its subcontractor in the construction of said systems, and claimed they had not been paid the various amounts due them therefor; that they claimed to have liens and privileges on the said systems.

That they had made demands on respondent to retain out of any balance which might be due to said contractor the various amounts alleged to be due to them. That the aggregate amount of said claims was four thousand six hundred and fifty dollars or thereabout. Respondent set forth in detail these various claims (among others that of John Buck & Son), and averred that it was entitled to have the court decree to whom the aforesaid sum of $2497.15 should be paid, and

to that end it tendered for deposit, or for such disposition as the court might be advised to make of it, the said balance. Naming the various parties, respondent prayed they be made parties and cited to show cause, if any they had, why the said balance should not be paid over to the plaintiffs, and after hearing the court grant all necessary order and decrees in the premises, and dismiss it without costs. It prayed also for all general and equitable relief.

The parties named in the answer of the town took notice of the proceeding and subsequently appeared and filed pleadings. All of them, with the exception of John Buck & Son, either voluntarily dismissed their claims or pleas or the same were dismissed by the court and they have not appealed.

John Buck & Son in making themselves parties to the action averred that the plaintiff, The Consolidated Engineering Company, Limited, and the defendant, The Town of Crowley, were legally indebted to them *in solido* in the sum of seven hundred and sixty-four dollars and fifty cents, with interest thereon at the rate of five per cent. per annum from judicial demand, for this; that between the first day of February, 1898, and the fifteenth day of April, 1898, they sold to Knapp Bros., sub-contractors under plaintiff company in the construction of a water works plant and electric light plant for defendant, a certain number of bricks and shells for use in the construction of said works, according to an itemized account thereof, and made a part of the petition; that the said material was used in the said works, and that, although payment therefor has been demanded, and was long past due, the claim was still unpaid.

That, conformably to law, and in order to preserve his privilege and secure the payment of his said claim, he filed with the clerk of court in and for the Parish of Acadia a sworn statement of his said account and that same was of record on the mortgage records of said parish, and acted as a valid lien and privilege against the said public works in which the said materials had been used. That the said claim was a preference debt, and should be paid in preference to any other claim against the said works.

That under the contract of the town of Crowley with the Consolidated Engineering Company, Limited, who were the contractors for the construction of the said works, twenty-five per cent. of the contract price remained unpaid until the works were cleared of all liens and privileges for labor or material; that respondent's claim was notified to

both parties to the said contract before any part of the said twenty-five per cent. was paid; that defendant town, by ordinance, had accepted the said works and entered into possession and use of the same; that if said works had proven defective, or if defendant town had expended a portion of said twenty-five per cent. for repairs since acceptance of said works, respondent should not be compelled to suffer a diminution of his just claim, but was entitled to a security for his claim to the full amount of the said twenty-five per cent, and they specially pleaded that defendant town was without right to use any portion of the said fund for any purpose other than the payment of the contract price or of valid liens against the said works. That the said twenty-five per cent. aggregated $4080.12.

In view of the premises they prayed that their answer be filed; that after due trial had, judgment be rendered in their favor against the Consolidated Engineering Company, Limited, and the town of Crowley *in solido* for the full amount of their claim aforesaid; that their lien and privilege upon the said water works and electric light plant of the town of Crowley be recognized, as well as their right to be paid by preference out of the said twenty-five per cent. of the contract price by the town of Crowley; and that they be paid out of the said fund by preference over the said Consolidated Engineering Company, Limited, or any other claimant. They prayed for costs and for full, general, and equitable relief.

The court rendered judgment *in favor of the plaintiffs* against the town of Crowley *as prayed for,"* saving and excepting *admitted* credits and the amount of one hundred and two dollars and fifty-five cents," and ordering the town "to retain in its hands, to be paid over to John Buck & Son, the sum of $638.50 in full satisfaction of their claim against said town as declared upon in their suit against it in No. 1118 of the files of this court."

The town of Crowley appealed from the judgment against it in favor of the plaintiffs.

The plaintiffs appealed from the judgment in favor of John Buck & Son.

John Buck & Son moved in the Supreme Court to amend the judgment in their favor so as to give them judgment for full amount as prayed for by themselves.

### OPINION.

The Consolidated Engineering Company, Limited, one of the plaintiffs in this suit, entered, in November, 1897, into a contract with the town of Crowley for the construction and installation of a water works system and electric light plant in the town. On the 16th of September, 1898, at a regular session of the Town Council, the water works and electric light plant was formally accepted by vote, and the Mayor authorized to settle with the company in full, except such amounts as were due by it on the works to other parties to the knowledge of the Mayor and Council. This had been proceeded by the tests provided for in the contract under the superintendence of the engineer selected by the town and was accepted by the town "upon the recommendation of the said engineer" and delivered as a completed and finished work.

The contractors had bound themselves to maintain the work executed by them in perfect order and good repair for a period of one year from completion, except the ordinary and legitimate wear and tear, and except also the results of accidents and circumstances for which they may not be accountable nor contributory, but they would be responsible and liable during the period of one year for defects, injuries, or damages, to any other portion of the systems, or to any other property public or private, or to persons due to clearly established defects, imperfections and deficiencies in any portion of the work contracted for by them.

It was one of the conditions of the contract that "the systems of plants should be delivered to the town free from all liens, royalties or other encumbrances of any nature and kind whatsoever."

The price originally agreed upon was the sum of *twenty-seven thousand and fifty dollars,* payable to the extent of *twenty-one thousand dollars* in bonds of the town, the balance payable in money, but in the contract it was declared that "in consideration of certain unearned interest on the bonds to be issued by the town the contractors *deducted from the contract price the sum of one hundred and five dollars,"* leaving a balance of *twenty-six thousand nine hundred and forty-five dollars* to be paid by the town. During the progress of the work a further deduction of seventy-five dollars was made in consequence of changes made in the wells, so that finally the price to be paid was twenty-six thousand eight hundred and seventy dollars. Of this amount the plaintiffs, under the contract and the evidence, must be held to have received *twenty-one thousand dollars* in bonds of the town

of Crowley, leaving to be accounted for the sum of *five thousand eight hundred and seventy dollars.*

The defendant denies that it owed this balance; it claims that at the time of the acceptance of the work the balance due was five thousand eight hundred and· seventy dollars; that after the work was accepted, on September 6th, 1898, it had paid to the contractor $300 on account of the contract; that on October 21st, 1898, the contractor drew on it two drafts in favor of Muir & Fromherz (two of the plaintiffs), one for *four hundred and forty-six dollars and seventy-three cents* ($446.73), and the other for *six hundred and twenty-six dollars and thirty-three cents* ($626.33); that it was agreed that there should be deducted from the contract price the sum of *four hundred and sixteen dollars and eighty-two cents* ($416.82) as part of the forfeit for the delay in completing the work; that after making these deductions there remained due on the price a balance of *four thousand and eighty dollars and twelve cents* ($4080.12). It claimed that this balance was subject to still further reduction by reason of its having made expenditures to the amount of fifteen hundred· and eighty-two dollars and ninety-seven cents ($1582.97), in repairs and in replacing the lamps and in maintaining the plant in good order and repair. Deducting the amount of these expenditures, it recognized that it was indebted to the contractors in a balance of *two thousand four hundred and ninety-seven dollars and fifteen cents* ($2497.15).

This amount it declined to pay over, assigning as a reason that it had been notified of the existence of claims against the contractors· aggregating the sum of four thousand six hundred and fifty dollars or thereabouts, asserted to be secured by lien and privilege on the fund in its hands and on the water works and electric light plant, and that it could not, in view of said claims, pay over the balance in safety. It named various parties making the claims, and the amount claimed by each, and tendered to the court the balance acknowledged to be due by it, and prayed that the various claimants be made parties to litigate the said claims. The different parties named appeared and set up their. claims, but they were all dismissed save that of John Buck & Son, and none of these claims but the last named are before the Supreme Court for adjudication on appeal.

In its reasons for judgment the District Court declared "that on the trial of the cause it was shown that the boiler furnace was broken, and required repairs. It was shown that certain joints of the pipes did

leak and that the stand pipe leaked and was repainted. In rebuttal of this the plaintiff has shown that the plant was constructed under the superintendence of the town's engineer, was turned over to the town and accepted in perfect order. It was shown that even before the town received the plant it had already leased the property. It was shown that some of the persons placed in charge of the property were incompetent and may have wrecked the plant since it came into the possession of the town. It was incumbent on the plaintiff to show that it had turned over to the town the work in accordance with the plans and specifications agreed on; the whole work to be executed in a good and workmanlike manner. This, in my opinion, it has done with the exception of the work at the boiler setting. In my opinion the entire furnace should have been lined with fire brick, lined with fire clay. This was not done in consequence of which the wall had to be repaired at an expense of one hundred and two dollars and sixty-five cents ($102.65), for which it should be reimbursed, and it is so ordered. It was incumbent on the town to clearly and unequivocally establish that the defects arising after its acceptance of the plant were due to clearly established defects, imperfections or deficiencies in any portion of the work contracted for by it. This, in my opinion, it has failed to do, save as to the boiler settings, previously referred to, for which reasons plaintiff is to have judgment against the town as prayed for, saving and excepting admitted credits and the amount of one hundred and two dollars and fifty-five cents before allowed."

The plaintiffs complain of the allowance to the town of this sum of one hundred and two dollars and fifty-five cents, and urge in their brief that the judgment be altered in this respect, but they appealed only from the judgment in favor of Buck and filed no prayer for amendment of judgment in the matter of the town's appeal. The town complains of the form of the judgment. It urges that the judgment of the lower court is erroneous because of its indefiniteness, if for no other reason; that it allows the amount claimed by plaintiffs, less "admitted" credits; that some of the credits claimed (such as the two drafts paid) were not "admitted," but "proved." That it was erroneous, because, even if the credits both admitted and proved are to be deducted from the amount allowed, to-wit: $6205.05, the plaintiff would thereby receive $260.05 more than the contract price.

The town contends that the judgment is erroneous because all the payments and offsets claimed by it were not allowed. It prays for the

amendment of the judgment so that the plaintiff shall not take more than the difference between $27,050, the contract price, and the aggregate of the payments and offsets detailed in its answer and brief. Should the court consider that, upon the evidence in the record, it be not entitled to the relief asked, it prays that the cause be remanded to afford the defendant an opportunity of adducing testimony, as it offered to do, in rebuttal of that furnished by the plaintiff. The town claims that the judgment must show that the issues between the parties have been adjudicated and should show with certainty the matter determined. It must be certain and specific and such as the defendant may understand and be capable of performing. (Ency. Pleading and Practice. Vol. II, pages 928 and 933).

That judgments for money must specify the amount for which they are rendered, and that a judgment which fails to do so is at least erroneous, if not absolutely void; that judgments must not only state the amount for which it is rendered, but the amount must be stated with certainty; that when the amount for which the judgment was rendered is wholly uncertain the judgment is void; that they should state the precise amount for which they are rendered and not leave it to be ascertained by calculation; that if such *data* is given and the amount may be ascertained with certainty, the judgment will be upheld, but if a judgment be for a sum to be thereafter ascertained by a ministerial officer, it is erroneous. The court is referred by defendant to Ency. Pleading and Practice, Vol. II, page 936; Peet vs. Whitmore, 14 Ann. 410; Decker vs. Bradford, 4 M. 312, and Mudd vs. Rogers, 10 Ann. 648.

The only one of the claims set up in defense by the town, which the court decreed to be well grounded in precise and affirmative terms, is the amount claimed for one hundred and two dollars and five cents, amount expended for repairs to the furnace. All other claims were rejected except in so far as they were "admitted." The judgment does not recite which of these claims were "admitted," nor for what amounts they were admitted. For the ascertainment of what these "admitted" claims are, we have to leave the judgment itself and have recourse to the evidence found in the record. The court should itself have made a finding and decree as to what these claims were, and it should have passed upon and decided in favor of the defendants the claims set up by the defendant which, though not "admitted" by the plaintiffs, were established by the evidence to be well founded in law and fact. By the

terms of the judgment as written, all claims set up by the defendant, which were not "admitted" by the plaintiff and not specifically recognized by the court, are rejected. We do not think the court intended to render so narrow a judgment, for the town unquestionably sustained by evidence its right to be credited with several partial payments which it had made since its acceptance of the plants constructed by the plaintiff. We are of the opinion that the District Court did not err in rejecting all the claims set up by the town of Crowley for expenditures made by it in repairing the plants after their acceptance, other than the one hundred and one dollars and five cents just referred to and the claims admitted to be just by the plaintiff.

The court held correctly that after the town had accepted the plants upon the recommendation of the City Engineer as having been constructed in accordance with the terms and specifications of the contract between the parties, the onus was upon it to establish affirmatively the liability of the contractor for expenditures for any repairs to the work which it made subsequently to such acceptance on an allegation that their expenditures were made necessary by reason of their failure to have complied with their engagements and that it had failed to sustain its claims in this respect. The town urges that it had the right on the trial to have introduced the additional testimony which it offered to produce, and that the court erred in not allowing it to do so, but we do not think that this contention is well grounded. The plaintiff offered its evidence and closed; defendant offered its evidence and closed. Plaintiff offered its evidence in rebuttal and closed; defendant then asked the court to permit it to introduce further evidence, but on objection of the plaintiff the court refused it permission to do so. The defendant must be held to have known that it carried the burden of proof as to its right to reimbursement for the expenditures made by it for repairs, and it should have introduced proper and sufficient evidence when the case was turned over to it by the plaintiff. It had no legal right to postpone the introduction of this evidence until after the plaintiff had closed its own case on rebuttal. We do not think the court abused its discretion in refusing to allow defendants to offer further evidence. The defendant as well as the plaintiff must tender proper proof at the proper time. Liquor and Tobacco Company vs. Jeffries, 45 Ann. 632.

An examination of the evidence satisfies us that the original price agreed upon of twenty-seven thousand and fifty dollars for the con-

struction of the works should have been decreed by the court to have been reduced by the following amounts, viz: one hundred and five dollars on account of unearned interest on the bonds; seventy-five dollars for changes made in the wells; twenty-one thousand dollars in bonds of the town; three hundred dollars paid on or about the 7th of September, 1898; four hundred and forty-six dollars and seventy-three cents and six hundred and twenty-six dollars and thirty-three cents paid on October 31st, 1898. Four hundred and sixteen dollars and eighty-two cents as part of the forfeit for the delay in completing the works; five hundred and fifty-five dollars and thirty-two cents on account of replacing the lamps, and one hundred and two dollars and fifty-five cents for repairs to the furnace; these amounts aggregating the sum of twenty-three thousand six hundred and twenty-seven dollars and seventy-five cents ($23,627.75), which amount deducted from the original price agreed upon of twenty-seven thousand and fifty dollars, left as the balance due by the town of Crowley to the Consolidated Engineering Company, Limited, the sum of three thousand four hundred and twenty-two dollars and twenty-five cents ($3422.25), which bears legal interest from date of acceptance of the plant, for which the District Court should have rendered judgment in favor of the plaintiffs against the town.

In dealing with the claim of John Buck & Son, the court, in its reasons for judgment, said:

"John Buck & Son had furnished Knapp Bros. & Co., sub-contractors of the plaintiff, bricks to the amount of $764.50. These bricks, with the exception of two car-loads amounting to 21,000, valued at six dollars per thousand, and aggregating one hundred and twenty-six dollars, were used in erecting the works agreed upon between plaintiff and the town."

"John Buck & Son, on May 30th, 1898, notified the Consolidated Engineering Company, Limited, of Knapp's indebtedness to them for material furnished by them for the construction of the waterworks plant at Crowley. On May 31st, the company acknowledged receipt of this letter promising to refer the same to the president and general manager, Mr. Pasquier. On June 24th, they again wrote to the company notifying them that they had filed a claim against the waterworks plant of Crowley, La., for materials furnished to Knapp Bros. & Co., amounting to $764.50. The lien was recorded on the 6th of June, 1898. On March 16th, 1900, John Buck & Son sued the town of Crowley for

this amount, but by consent of all parties, the matter was relegated to the present suit for adjudication. It is now authoritatively settled that the furnisher of materials, having made out and served attested accounts upon the proper authorities, in pursuance of Article 2772, Revised Civil Code, are entitled to be paid by preference over the contractor for any balance due by the town to the contractor. For an interesting opinion on this point, see Pullis Bros. Iron Co. vs. Parish of Natchitoches *et al.,* Ruston State Bank Intervenor, reported in the 26th Southern Reporter, p. 402 (51 Ann. 1377), which covers the instant case like a blanket. Opponents showed upon the trial that at the time the attested account was filed and recorded the plaintiff was still indebted to its sub-contractor, Knapp Bros. & Co. Mr. F. Knapp admits this (*vide* his testimony). When asked the amount he said he had promised to look it up, but had not done so. The contract shows that plaintiff was to pay these sub-contractors $3417; seventy-five per cent. of this amount to be paid from time to time, and twenty-five per cent. as soon as the plant was accepted by the town. This acceptance was not made until September, nearly four months after the lien (being the attested account required under Article 2722) was filed and the contractor was, of necessity, at the time of the rendition of this account, still indebted to his sub-contractors in an amount sufficient to discharge opponent's claim. Twenty-five per cent. of $3417 amounts to eight hundred and fifty-four and 52-100 dollars."

"The money being still in the town's hands; being in its hands at the time the attested account was filed, it must, under the circumstances above referred to, in order to escape liabilities for this debt, pay opponents the amount herein adjudged to be due them, viz: $638.50. It was incumbent upon the contractor to show it had paid its sub-contractors the entire amount due them. It had to do this in order that the town might safely pay it. It contracted with the town to turn over the plant free from all liens, privieges, etc. It did not do this. John Buck & Son, as furnisher of material used in the construction of the plant, has a lien on the same. This lien was seasonably recorded and previously attested as provided for under the articles of the Civil Code as interpreted in the 23rd Southern Reporter, and unless paid by plaintiff (the Consolidated Engineering Company), will have to be discharged by the town. For which reasons the town will retain in its hands, to be paid over to John Buck & Son, the sum of $638.50 in full

satisfaction of their claim against said town as declared upon in their suit against it, No. 1118 of the files of this court."

The court made the following *addendum* to its reasons for judgment after the judgment was signed:

"I find out since writing the above that Mr. Daspit testified that on June 6th, 1898, his firm owed Knapps Bros. & Co. nothing. He furnished an account from the books of the company also establishing this fact. When I stated the plaintiffs had not proven they were not indebted to Knapp Bros. & Co., on June 6th, 1898, I was in error. This does not, however, alter the situation to their advantage. Having bound themselves to turn over the plant to the town of Crowley free from all liens and privileges, it is their bounden duty, under the contract, to pay their claim. They had no right to anticipate. payments to Knapp Bros. & Co. They bound themselves not to pay the sub-contractor twenty-five per cent. of amount due him, until after work was accepted by the town and the lien of opponents was recorded before this acceptance. The original decree remains undisturbed. They must first pay off this lien before they can call upon the town for the balance due them."

We find in the record the following agreement:

"Agreed between P. J. Chappuis for defendant and Cline & Cline for John Buck & Son, for the purpose of this suit, the demand of John Buck & Son is limited to an assertion of their right to be paid out of any balance which the court may find the town of Crowley to owe plaintiff, in case the said John Buck & Son shall be decreed to have a privilege thereon. For the purposes of this suit, all personal demands against the town of Crowley for a money judgment, and for the recognition of any lien on the waterworks and electric light plant system, are waived.

This will not affect any rights which John Buck & Son may have, and which have been claimed in the suit of John Buck & Son vs. The Town of Crowley, No. ——, District Court Acadia Parish."

None of the pleadings in the case referred to in this agreement appear in the record. The record contains the copy of a bond furnished by Knapp Bros. & Co. to the Consolidated Engineering Company for the sum of two thousand dollars to secure the faithful performance by the former of their sub-contract. The condition of the bond was that if the building (they were to construct) should be delivered to the Consolidated Engineering Company, Limited, without their having

incurred any loss, injury or damages through delay, interruption, neglect, oversight or incompetency, chargeable to the said Knapp Bros. & Co., and should indemnify said Consolidated Engineering Company against all claims for payments due parties, or liens, etc., then in that event the obligation to be null and void, otherwise to remain in full force and virtue.

The difference between the amount caimed by John Buck & Son ($764.50) against Knapp Bros. & Co., and the amount of the judgment rendered in their favor ($638.50) arose from the fact that although Buck & Son sold and delivered bricks to Knapp Bros. & Co. to the amount of $764.50, the latter did not use all of these identical bricks in the construction of the works, but loaned 21,000 of the same, valued at $126.00, to the Acadia Brick Company, who used the same for their own purposes and subsequently replaced the loaned brick by 21,000 other brick which Knapp Bros. & Co. used in the construction of the works. The court was evidently of opinion that to the extent of these 21,000 brick and the value thereof ($126.00), John Buck & Son had n) privilege upon the fund in the hands of the town of Crowley or upon the plant.

Knapp Bros. & Co. were not made parties to this, the present proceeding, though F. Knapp, one of the partners, was placed upon the stand by Buck & Son as a witness. By this witness it was shown that Knapp & Bros. were sub-contractors of the Consolidated Engineering Company for part of the work contracted to be done by the latter for the town of Crowley; that the firm of Knapp Bros. & Co. had a written contract with Buck & Son to supply them with brick at six dollars a thousand to enable them to carry out their contract; that the bricks contracted for were furnished and that with the exception of 21,000 they were used by Knapp Bros. & Co. in the construction of their work upon the plant. The witness could not say how the account between Knapp Bros. and Buck & Son stood on the 5th of June, 1898, nor that of Knapp Bros. & Co. with the Consolidated Engineering Company on the 6th of June, 1898. He stated that the latter had paid them a considerable sum of money. He stated that Knapp Bros. & Co. had not officially notified the Consolidated Engineering Company, Limited, that Buck & Son had a claim against them, but he himself had talked it over with the president of the Engineering Company. That at that time Knapp Bros. & Co. had been pretty well paid up.

H. H. Buck, of Buck & Son, was shown the account filed in evidence showing the account between Buck & Son and Knapp Bros. & Co. He

testified that it was correct and the amount was unpaid. He stated that Buck & Son had taken steps to secure their claim by filing a lien against the town of Crowley.

On the 6th of May, 1898, Buck & Son wrote a letter to the Consolidated Engineering Company, Limited, declaring that "they notified that company that they had furnished material for the construction of the water works plant at Crowley to the amount of seven hundred and sixty-four dollars and fifty cents, which had not been paid, and that they would hold the property responsible for the amount in case same was not paid. That material was delivered to Knapp Bros. & Co., contractors. They asked acknowledgment of receipt of the letter.

On May 31st, 1898, the Engineering Company wrote Buck & Son, acknowledging receipt of the letter, "notifying them of unpaid claim for material furnished Knapp Bros. & Co., as per contract, amounting to $764.50, and that the letter had been referred to Mr. Pasquier (the manager and vice-president), who was then out of town, but who would be in Crowley in a few days.

On June 24th, 1898, Buck & Son, by letter, notified the Engineering Company that "they had filed a lien on the city water works plant of Crowley, La., for material furnished to Knapp Bros. & Co., contractors, to the amount of seven hundred and sixty-four dollars and fifty cents."

The contract itself between Knapp Bros. & Co. and John Buck & Son was not recorded, but on the 6th of June, 1898, Herbert H. Buck appeared before P. J. Chappuis and made the following deposition:

*"John Buck & Son, Manufacturers of Brick and Tile—*

"State of Louisiana, Parish of Acadia.

"On this 6th day of June, before me, Philip J. Chappuis, a notary public in and for the Parish of Acadia, personally came and appeared Herbert H. Buck, a resident of the Parish of Calcasieu, who, after having been by me duly sworn, deposed and said:

"I am a member of the firm of John Buck & Son of Lake Charles, La. The said firm is a creditor of Knapp Bros. & Co., of the Parish of Acadia, in the sum of seven hundred and sixty-four dollars and fifty cents for bricks and shell sold and delivered to them by affiants, said firm, at various times between February 1st and April 13th, 1898, as per detailed statement heretofore annexed and made part hereof. The said account is true and correct, due and unpaid. The materials included in this said account were actually used in the construction of the following parts of the electric light and water works plant of the town of Crowley, to-wit: The brick foundation for an iron stand-pipe

located on lot No. 1 in block 91 of the town of Crowley; (2nd) a brick building known as the power house situated on the following property, to-wit:

Lots 1, 2, 3, and 4 of Duson's addition to the town of Crowley and a parcel of land situated south of and adjoining the above lots of ground and measuring 200 feet along and abutting the said lots by a depth of 100 feet running back between parallel lines, all as per plat of the said town and of the said addition on file in the office of the clerk of court in and for the Parish of Acadia.

The above described lots of ground belong to the town of Crowley, who entered into a contract with the Consolidated Engineering Company, Limited, of New Orleans, for the construction of the said system of water works and electric lights. The said foundation and the said power house were constructed by the said Knapp Bros. & Co., as sub-contractors under a contract with the said Engineering Company. Wherefore affiant declares that he makes his affidavit for the purpose of securing unto his said firm the lien and privilege accorded by law to the furnisher of building materials on the lots of ground hereinbefore described, not exceeding one acre upon which the works aforesaid have been constructed.

Original signed—H. E. Buck.

Sworn to and subscribed before me on the date first above written, at my office in Crowley, La.

Original signed—P. J. Chappuis, notary public.

The following account is annexed to this deposition:

Lien and privilege against Knapp Bros.

Messrs. Knapp Bros. & Co., Crowley, La.

John Buck & Son, Manufacturers of brick and tile.

| | | |
|---|---|---:|
| February 2, 10,000 bricks ($6.00 per 1000) | | $60 00 |
| February 12, 10,000 bricks | | 60 00 |
| February 16, 20,000 bricks | | 120 00 |
| February 24, 12,000 bricks | | 72 00 |
| February 26, 12,000 bricks | | 72 00 |
| February 28, 10,000 bricks | | 60 00 |
| March 23, 8,000 bricks | | 48 00 |
| March 24, 24,000 bricks | | 144 00 |
| April 12, 21,000 bricks | | 126 00 |
| April 12, 2 loads of shell | | 2 50 |
| | | |
| Total | | $764 50 |

The record does not show that this attested account or deposition or any account whatever was ever placed in the hands of either the town of Crowley or of the Engineering Company, Limited, though Mr. Barry, the Mayor of the town, testified that he was aware of the fact that Knapp Bros. & Co. were contractors for the Consolidated Engineering Company, Limited, to do the work, but he did not know who bought the material. The town became aware in some manner of the existence of claims against Knapp Bros. & Co. as appears by the testimony of Daspit, the secretary of the Consolidated Engineering Company. He produced the following statement which appears in the record.

Knapp Bros. & Co., Crowley, La., in account with Consolidated Engineering Company, Limited.

## Debtor.

To board and traveling expenses, salary, etc., Pasquier & Gill,
    one months service in your interest.....................$400 00
One-half of forfeit exacted by city of Crowley.............. 435 50

1898—
March 12—to cash ......................................$945 00
April 18—to cash ......................................... 972 00
May 11—to cash ......................................... 609 98
May 11—to cash ......................................... 250 00
June 20—to merchandise ................................ 29 44
June 30—to merchandise ................................ 89 40
July 26—to merchandise ................................. 8 12
August 30—to cash paid Toler............................ 89 15

                                                        $3828 59

## Creditor.

March 12—by contract .................................$3417 00
            by extra allowance on pump pit, etc.............. 185 00
            by material furnished per your bill.............. 52 20

                                                        $3658 20

                                                        170 39

*Memorandum.*

Claims against Knapp Bros. & Co. filed with city of Crowley—

Jno. Buck & Son.........................................$764 50
Louis Fontenot .......................................... 155 00
Hormell ..............................................., 118 50
Crowley State Bank ...................................... 255 01
Mike O'Neill ........................................... 29 25

                                                    $1322 26

The witness testified "that the account was correct; that at the bottom of the account was a memorandum of claims against Knapp Bros. & Co. filed in the city of Crowley; that he had obtained this information from the city of Crowley. It notified the Engineering Company subsequent to the completion of the work. That at the time the contract was completed the Engineering Company was not indebted to Knapp Bros. That the money retained by the town at that time to pay Knapp's debt was the money of the Engineering Company. That the latter company had been notified by the town that certain monies, various amounts, were held back out of the balance due the Consolidated Engineering Company due various sub-contractors at the time of the settlement of the town's acceptance of the plant. The town admitted no liability on its part for these monies."

In the contract between Knapp Bros. and the Consolidated Engineering Company it was stipulated that should the former fail to complete the work contemplated in the time specified, they should pay the latter the same amount of forfeit money which the Engineering Company was bound under their contract to pay to the town—twenty-five dollars per day.

The terms of payment to Knapp & Co., under the contract, were:

Seventy-five per cent. of the engineer's monthly estimate of material delivered and work performed and accepted by said engineer, and would be paid from the first to the fifth of each month.

Twenty-five per cent as soon as the plant had been accepted by the engineer, the Mayor and the City Council.

John Buck & Son are not creditors of the Consolidated Engineering Company, Limited. They made no contract with it. Their contract was with Knapp Bros. & Co., and they are creditors of the latter. The

Consolidated Engineering Company, Limited, was no party to the contract between Buck & Son with Knapp Bros. & Co., nor were Buck & Son parties to the contract between the town and the Engineering Company. Buck & Son do not claim a privilege upon the water works and electric light plant or the ground upon which they are situated. If they had any such privilege they have expressly waived it and rely entirely upon their right to payment by preference over the Consolidated Engineering Company upon the portion of the price which the town of Crowley contracted to pay it for the construction of the works which still remains in the hands of the town.

The court rendered judgment in their favor to a certain extent upon the ground that the plaintiff company had bound itself to turn over the plant to the town free from all liens, privileges, encumbrances, etc., and the town had reserved the right to withhold payment until this should be done. That the plaintiff company could not escape from its obligation in this respect and the right of detention exercised by the town enured to the benefit of Buck & Son.

If the judgment of the court on this branch of the case be correct at all, Buck & Son can not complain of the court's action having limited their right to payment to the value of the bricks furnished by them, which were actually used in the construction of the building. The right of the furnisher of supplies to a privilege is dependent upon the fact that the supplies furnished were actually used in the construction of the building. It does not suffice that the contractor should have used in the building materials of the same kind, and to the same extent or value in substitution on replacement of those furnished, using those which had been furnished for some other purpose.

The judgment of the court, in favor of Buck & Son, is made to rest more upon the stipulations of the contract between the town and the Engineering Company than upon any direct rights which they might have themselves. The stipulations in that contract were in the interest of the town and for its protection and were not in the interest of parties who might urge claims against the contractor. The town was not authorized by those stipulations to champion the rights of third parties. Unless the town was justified in the retention of the fund by a liability of its property for the payment of these claims or by a personal liability on its part to pay the same, it should not have withheld payment of the unpaid portion of the price.

The period fixed by the contract for the payment was the acceptance

of the plant; the date of the maturity of the claim was not advanced by the fact that the town should have thought proper to resist the payment. The town would have been fully protected in the payment of the balance of the price to the plaintiff at the time of the acceptance of the plant, unless some third party had then a privilege or lien upon its property or upon the fund in its hands. If Buck & Son recover, they must do so on the strength of their own rights. They insist that they have established their rights in the premises. The case of Pullis vs. The Parish of Natchitoches (51 Ann. 1377), on which they place great reliance, differs in its facts from the present one. The plaintiffs in those suits were creditors of the contractor himself, and not as were all the claimants here, creditors of a sub-contractor. They had served attested accounts on the proper parties according to the statute of 1844 (now forming part of Article 2772 of the Civil Code), and had, besides, proceeded by way of attachment and seized the funds of their direct debtor, the contractor, in the hands of the Parish of Natchitoches. The rights of the claimants here rest exclusively upon the provisions of the Act of 1844 and upon the conditions of that act having been complied with. Assuming that the benefit of that act can be made to be extended to the claims of a creditor of a sub-contractor so as to be made to affect the rights of the original contractor in his relations with the town, we do not think that the provisions of the act have been complied with. No *attested account,* so far as the record discloses, was ever served by Buck & Son upon the Consolidated Engineering Company, nor upon the town, and none, therefore, was ever served by the latter either upon Knapp Bros. & Co. or the Consolidated Engineering Company, Limited; Knapp Bros. & Co., the real debtors, have been utterly ignored throughout. They are not parties to the present proceeding. They were not made parties thereto by placing one of the partners upon the stand as a witness. The recording of the attested account in the recorder's office, whatever effect it might have had as affecting the right of Buck & Son *to a privilege on the waterworks and electric light plant or the ground connected therewith* (and *no such privilege is now claimed*), did not act as a substitute and equivalent to the service of "an attested account" upon either the town, Knapp & Bros. or the Consolidated Engineering Company, Limited, in so far as rights and obligations in respect to the fund of the contractor in the hands of the town were concerned. The Consolidated Engineering Company, Limited, was not called upon to know, so far as that fund

was concerned, who the creditors of Knapp Bros. & Co. were, nor what might be the amounts due them which were unpaid; they were not constructively notified of that fact by the mere recording of the "attested account" in the recorder's office.

We are of the opinion that the judgment of the court on this branch of the case is erroneous and should be reversed. For the reasons assigned it is ordered, adjudged and decreed that the judgment rendered herein in favor of John Buck & Son appealed from herein be and the same annulled, avoided and reversed, and that the demand of the said John Buck & Son be and the same is hereby rejected, and their suit dismissed at their costs.

It is further ordered, adjudged and decreed that the judgment of the District Court in favor of the plaintiffs herein, against the town of Crowley, be and the same is amended and judgment is hereby rendered in favor of the plaintiffs against the town of Crowley, defendant herein for the sum of three thousand four hundred and twenty-two dollars and twenty-five cents, with legal interest from the 6th of September, 1898 (date of acceptance of the plant by the town), until paid, costs of appeal (on plaintiff's demand) to be borne by plaintiff and appellee, costs below to be paid by the defendant.

PROVOSTY, J., takes no part.

Rehearing refused.