(84 South. 116)

No. 23453.

THOMPSON v. O'LEARY et al.

(Nov. 3, 1919. Rehearing Denied March 1, 1920.)

*(Syllabus by Editorial Staff.)*

1. SALES ⬤═89—AGREEMENT AS TO WEIGHT OF SAND PER CUBIC YARD BINDING.

Where contract specifically stated that gravel was to be delivered at a certain number of pounds to the yard, the purchaser was bound by such measurement, and could not change the form of measurement without the knowledge or consent of the seller.

2. CONTRACTS ⬤═186(1) — NOT AFFECTED BY AGREEMENTS WITH THIRD PARTY.

Where a contractor had difficulty in giving bond, and surety required him to have materialmen waive any lien or privilege that they might have on the building to be constructed, a letter signed by the materialmen and addressed to the surety, waiving their rights of lien on the building, did not modify in any way contracts between the materialmen and the contractor, being res inter alios acta; the waiver only affecting the surety.

3. SALES ⬤═77(2)—EXPENSE OF RETURNING CEMEST SACKS TO BE BORNE BY PURCHASER.

A contract of sale of cement providing that "The usual credit of 10 cents each will be given on all empty cement sacks returned in good con-

dition to the S. Cement Co., at Rockmart, Ga.," contemplated that the purchaser should stand the expense of delivering the empty sacks at the place designated.

4. MUNICIPAL CORPORATIONS ⬤═376—OWNER LIABLE TO MATERIALMEN FURNISHING ATTESTED ACCOUNTS AT TIME OWNER HAD SUFFICIENT MONEYS IN HAND TO PAY ACCOUNTS.

Where furnishers of materials for a warehouse constructed for a port commission served attested accounts upon the port commission at a time when it had in its hands to the credit of the contractor more than sufficient to meet the several demands, such materialmen are entitled to a judgment against the port commission for the amounts due from the contractor.

5. MUNICIPAL CORPORATIONS ⬤═376—MATERIALMEN ENTITLED TO JUDGMENT AGAINST BANK HOLDING FUNDS OF OWNER IN TRUST FOR CREDITORS.

Where bank which loaned money to contractor took over money from the board of port commissioners due the contractor under an agreement to hold it in trust as representing attested accounts served on the owner, materialmen who served attested accounts are entitled to a judgment against the bank as well as against the board for the amount of their demands; the amount turned over to the bank being sufficient to cover the demands.

6. MECHANICS' LIENS ⬤═51, 113(2)—MECHANIC'S PRIVILEGES; MONEY LENDER TO CONTRACTOR HAS NO PRIVILEGE ON BUILDING OR RIGHT BY SERVICE OF ATTESTED ACCOUNT ON OWNER.

A money lender to a contractor has no privilege on the building and no right, by service of attested accounts, to hold a fund due by the owner to the contractor.

7. MUNICIPAL CORPORATIONS ⬤═376—WAIVER OF RIGHT OF LIEN TO BUILDING AS TO SURETY NOT WAIVER AS TO BANK LENDING MONEY TO CONTRACTOR.

A waiver of liens on a building constructed by board of port commissioners by furnishers of material in favor of a bond company, on account of the difficulty of the contractor in obtaining a bond, was not a waiver in favor of a bank thereafter lending money to the contractor for the purpose of carrying out his contract.

8. MECHANICS' LIENS ⬤═113(1)—MECHANIC'S PRIVILEGES; WAIVER OF LIEN ON BUILDING NOT WAIVER OF RIGHT OF PREFERENCE TO BE PAID OUT OF FUND IN HANDS OF OWNER.

A waiver of a lien or privilege on a building by furnishers of material is not a waiver

of the right of preference to be paid out of a fund in the hands of the owner of the building, given by Civ. Code, art. 3272, to materialmen serving attested accounts upon the owner.

9. MECHANICS' LIENS ⊕═94 — MECHANIC'S PRIVILEGES; RIGHTS OF MATERIALMEN FIXED BY LAW AND CANNOT BE AFFECTED BY OWNER.

Rights of materialmen are fixed by law, and nothing that the owner of a building under construction can do can change them.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by J. W. Thompson and others against J. P. O'Leary and others consolidated. From a judgment for only part of the relief prayed for, four of the plaintiffs appeal. Reversed and amended.

P. M. Milner, of New Orleans, for appellant Thompson.

J. Arthur Charbonnet and Raymond Gauche, both of New Orleans, for appellant American Sheet Metal Works.

Robert H. Marr, of New Orleans, for appellant Carolina Portland Cement Co.

Dart, Kernan & Dart, of New Orleans, for appellee Canal Bank & Trust Co.

W. L. Hughes, of New Orleans, for appellee J. P. O'Leary, doing business as Jefferson Const. Co.

H. W. Robinson, of New Orleans, for intervener appellant Oliver H. Van Horn.

SOMMERVILLE, J. Plaintiff and several other materialmen sued J. P. O'Leary, doing business under the name and style of Jefferson Construction Company, Canal Bank & Trust Company, and the board of commissioners of the port of New Orleans, for the value of materials furnished to O'Leary in the construction of a cotton warehouse located in New Orleans, which was built at an approximate cost of $1,000,000. The suits were consolidated, and were tried at one time. There were judgments against O'Leary and in favor of the Canal Bank and the port commissioners. Four plaintiffs have appealed.

Three of the appellants filed attested accounts on the board of commissioners, the owner of the warehouse, before final payment by said board under contract with O'Leary. The fourth plaintiff, Oliver H. Van Horn, failed to file an attested account on the port commission, and he therefore has no claim to be paid by preference out of the fund in question.

Subsequent to the filing of the attested accounts by plaintiffs the port commission entered into a contract with the Canal Bank wherein the commission deposited with the bank, on the completion of the work, the sum of $88,513.79.

O'Leary, at the inception of the work, had assigned his contract with the commission to the bank, as security for the advances to be made to him by the bank. On the completion of the work the bank filed an attested account aggregating $69,235.87 on the port commission.

The district court recognized the claim of the bank as a preference claim and gave judgment accordingly, subordinating the claims of the materialmen to that of the bank, which had the effect of rejecting the demands of the four plaintiffs, as there was not enough money for all. O'Leary is insolvent and unable to pay his creditors.

The contract sued upon by J. W. Thompson in his petition, and admitted by O'Leary in his answer to be the contract between them, is, in part, as follows:

"J. W. Thompson.

"New Orleans, La., December 13, 1914.

"Jefferson Construction Co., City—Gentlemen: I beg to quote you the following prices on material for the cotton warehouse:

"Profit Island washed gravel, as per specifications, $1.35 per cubic yard, 2,600 pounds to the yard.

"Profit Island sand, screened or unscreened, $.90 per cubic yard, 2,400 pounds to the yard.

"If our regular washed gravel, ranging from

about ¼ to about 1⅜ can be used, the prices will be $1.35 per cubic yard, 2,600 pounds to the yard.

"Railroad scale weights to cover above. * * *

"Southern States cement $1.58 per barrel gross.

"The usual credit of 10 cents each to be given on all empty cement sacks returned in good condition to the Southern States Portland Cement Company, at Rockmart, Ga. * * *

"The above prices (except river delivery) are f. o. b. cars, Public Belt tracks, site. * * *

"Very truly yours,
            "[Signed] J. W. Thompson.
"Accepted January 4, 1915, for gravel, sand, and cement.
        "[Signed]  Jefferson Construction Co.,
                "By J. P. O'Leary."

Under the above, 2,555 cars of gravel and sand were furnished by the plaintiff to O'Leary. Accompanying the material were railroad bills of lading which showed the total weight of cars and contents, weight of car, or, as it is called, tare, and the net weight of material in cars. On the net weight of material in cars, the published tariff freight rate of 2 cents per 100 pounds was charged, and the freight charges on each car were plainly printed in the column "freight charges." The bills of lading or freight bills were sent by the plaintiff to the Jefferson Construction Company, to whom the cars, according to custom, were released upon payment of the freight. The construction company paid the freight, as an accommodation to Thompson and because it was in a hurry to get the material. The construction company then returned the freight bills to plaintiff, and it was then credited with the amounts paid by it for freight. These shipments continued from January 18, 1915, to November 16, 1915, without complaint, criticism, discussion, or any suggestion by the defendant to the plaintiff that the defendant would not be bound by the railroad scale weights shown on the 2,555 bills of lading.

The attested account served by Thompson on the port commission and upon O'Leary, in the sum of $12,477.08, was under the terms of the contract which called for 2,600 pounds to the cubic yard of gravel, and 2,400 pounds to the cubic yard of sand, together with the cement. Defendant O'Leary, after admitting the contract in the answer filed by him, resisted the payment of the claim of plaintiff on the ground that he did not receive from the plaintiff the number of cubic yards charged for in the bill rendered. He refused to be bound by the terms of the contract to the effect that sand and gravel were to be delivered by the pound, that is, 2,600 pounds of gravel and 2,400 pounds of sand to the yard. And he bases his contention upon the allegation that he had a man in his employ, unknown to plaintiff, who measured the gravel and sand by the yard on its arrival in New Orleans, and that there was a shortage in the measurement by the yard. And he refused to be bound by "railroad scale weights" which the contract provided should govern in the premises.

[1] The contract specifically says that the gravel was to be delivered at 2,600 pounds to the yard and the sand at 2,400 pounds to the yard; and those terms govern the parties thereto. At no time did defendant O'Leary dispute the terms of the contract until after this suit was filed. If there were shortages he should have reported them to the plaintiff, so that the latter might have made reclamation upon the railroad company therefor, or the mistakes might have been rectified. Defendant could not, under the contract, change the form of measurement of sand and gravel, employ a man to measure the sand and gravel under such reformed measurement, without the knowledge or consent of plaintiff. O'Leary paid bills based upon the pound measure of the material, made no claim whatever against Thompson for alleged shortages, and now refuses to pay the bill of Thompson which was made out in accordance with the contract.

There could have been no misunderstand-

ing on the part of O'Leary as to the terms of the contract, for it is not only stated that the prices were based upon the number of pounds to the yard, but that "Railroad scale weights [are] to cover the above."

The parties agreed that railroad scale weights would cover the contract, and the railroad alone was to fix these rates. The railroad fixed the rates, rendered the freight bills therefor, and the bills were paid by the defendant O'Leary without protest. The weights cannot be set aside at this time by the defendant. He agreed to them, accepted them, and is bound by them. He (O'Leary) was regularly credited by Thompson with the freight advanced by him (O'Leary).

In argument, counsel for O'Leary contends that a certain document marked "Dart 1," and dated December 30, 1914, is a part of the contract hereinbefore quoted from, and that it shows that sand and gravel were to be sold and delivered by the cubic yard and not by pounds. He did not set up this defense in his answer.

It appears that O'Leary had difficulty in giving bond in the sum of $400,000, and that the Maryland Casualty Company, the surety of O'Leary, required that O'Leary should have the principal materialmen to waive any lien or privilege that they might have on the warehouse building before it would sign the bond. It therefore prepared and presented to appellants letters addressed to itself, reading as follows:

"New Orleans, La., December 30, 1914.

"Maryland Casualty Co., Messrs. Kostmayer & Nicoll, Agents, New Orleans, La. Gentlemen: We hereby agree to deliver this material listed below in the quantities and at prices mentioned to Jefferson Construction Company, J. P. O'Leary, sole owner, for the construction of compress No. 1, sorting sheds Nos. 1 and 2, power house, garage, office, warehouse, J. K. G. and H. and their appurtenances for the board of commissioners for the port of New Orleans, La., promptly and in accordance with the requirements of the buildings. It being agreed that time is part of the consideration for the prices to be paid us, and that we will protect said Jefferson Construction Company from any loss arising through delivery of this material by us. Payment to be made us monthly in accordance with estimates of Frod, Bacon & Davis, engineers.

"48,000 cubic yards gravel at $1.35 per cubic yard.

"24,000 cubic yards sand at $.90 per cubic yard.

"50,000 barrels of cement at $1.18 per barrel net.

"We agree to sell this material on the responsibility of the Jefferson Construction Company and to waive our rights of lien on the buildings or the action against you as surety, regardless of the form of your obligation to the said board of commissioners of the port of New Orleans.

"Yours very truly,

               "[Signed] J. W. Thompson.
"Witness:        [Signed] A. A. Nicoll."

This letter is marked "Dart 1."

[2] O'Leary, or the construction company, was not a party to this letter, and it does not attempt to modify in any way the contract between the plaintiffs and O'Leary, defendant. It is res inter alios acta, and it has effect only on the parties thereto. The object is clearly expressed in the document. Thompson agreed with the Maryland Casualty Company to waive his right of lien on the buildings or of actions against the surety company as surety. And this was done so that the surety company might become the bondsman for O'Leary on the contract between him and the port commissioners.

The surety company, in its bond for O'Leary, did not undertake to reimburse the materialmen for any loss. It simply obligated itself to the port commission to see that the work was properly constructed by O'Leary in the time stipulated. Thompson had no claim against the surety company, and he agreed not to record a lien or a privilege against the property of the port commission so as not to interfere with the giving of bond by O'Leary for the faithful performance of the work and delivery of the

building. Hence the surety company is not a party defendant in these several suits.

A similar letter was exacted by the surety company from the two of the three remaining appellants, which is in like tenor to the one hereinbefore copied.

This letter will have to be again considered in connection with the defense of the Canal Bank.

[3] The item claimed by plaintiff for freight on the empty cement sacks returned by defendant O'Leary is disputed by O'Leary. The contract hereinbefore quoted reads as follows:

"The usual credit of 10 cents each will be given on all empty cement sacks returned in good condition to the Southern States Portland Cement Company, at Rockmart, Ga."

The contract says that the empty sacks, when returned by defendant, should be credited in, the bill of Thompson. They were to be delivered by defendant at the Southern States Portland Cement Company, at Rockmart, Ga., and they were therefore to be delivered at his expense. He cannot claim the amount of freight paid by him for delivering the empty sacks at the place designated in the contract.

The claim of the four appellants, as made in their several petitions, has been clearly proved against O'Leary, and they are entitled to judgments accordingly.

This brings us to a consideration of the claims made against the port commission and the Canal Bank by the plaintiffs.

[4] At the time that Thompson, the American Sheet Metal Works, and Carolina Portland Cement Company served attested accounts upon the port commission, it had in its hands to the credit of O'Leary, under the contract under consideration, more than sufficient to meet the several demands therefor. so there will have to be judgment in favor of these plaintiffs against the port commission for the same amounts as the judgments to be rendered against O'Leary.

[5] On June 22, 1916, the port commission entered into an agreement, to which O'Leary was not a party, with the Canal Bank, under the terms of which the commission transferred to the Canal Bank $88,513.79; $65,872.65 of this sum the bank agreed to hold in trust as representing the amount of the attested accounts which had been served on the port commission by furnishers of material to O'Leary.

The Canal Bank is liable with the port commission to the creditors of O'Leary who are entitled to be paid by preference out of the fund remaining in the hands of the owner.

[6] The bank which financed O'Leary had no preference on that fund, and it cannot displace the materialmen. The bank financed O'Leary, and the latter assigned and pledged his contract to the bank; but that contract did not displace the materialmen. A money lender to a contractor has no privilege on the building, and no right by service of attested account to hold the fund due by the owner to the contractor.

The law and the contract between the port commission and O'Leary both reserve to materialmen the right to be paid by preference out of the fund in the hands of the port commission, and this preference cannot be taken away from them.

[7, 8] The bank argues that the materialmen, the plaintiffs before the court, waived their preference and privilege and cannot be heard to claim it against the bank, which advanced the money to O'Leary on the face of these waivers. One of the waivers has been copied in this opinion (and the others are like it), and it is a waiver of all liens on the buildings, · or warehouses, in favor of the bond company, but not in favor of the bank or any one else. Besides, a waiver of a lien or privilege on a building is not a waiver on

a right of preference to be paid out of the fund in the hands of the owner of the building, where the law gives to materialmen the right of preference on that fund.

Article 3272, C. C., gives to materialmen two distinct but concurrent remedies: (1) The right by the service of an attested account to be paid out of the fund still in the hands of the owner; (2) a lien upon the building.

The loss or waiver by the materialman of his lien upon the building does not affect his right to be paid out of the fund in the hands of the owner. Municipality v. Bell, 4 La. Ann. 121, where it is said:

"Judson argues that the workmen, etc., acquired no privilege upon the fund, because the contracts were not recorded. The argument confounds the privilege upon the amount due by the proprietor with the privilege upon the building. The provision for the benefit of that class of creditors is twofold; a right of preference upon the amount due for the work, and a privilege upon the building. If the contractor has not secured himself a privilege upon the building by recording of his contract, he must rank as an ordinary creditor of the proprietor, and the workmen, etc., cannot be subrogated to a privilege which does not exist. But this does not affect the privilege of the workmen, etc., upon what the proprietor owes. The rights are obviously distinct. The one enables the workmen to take rank over creditors of the proprietor; the other over the creditors of the contractor. The latter privilege may exist without the former." Whitla v. Taylor, 6 La. Ann. 480; Consolidated Co. v. Crowley, 105 La. 615, 30 South. 222; Carolina Portland Cement Co. v. Southern Wood Co., 137 La. 469, 68 South. 831; Neith Lodge v. Vordenbaumen, 111 La. 218, 35 South. 524.

[9] The rights of materialmen are fixed by law, and nothing that the owner can do can change them. Meyer v. Bichow, 133 La. 975, 63 South. 487.

The vice president of the Canal Bank testified that he saw the waivers made by the materialmen in favor of the bond company, and that they were inducements to him to finance O'Leary. When he saw these waivers he knew perfectly well that they, in the first place, were in favor of the surety company; he knew, further, that the only thing that was waived was the privilege on the building. He therefore did not advance the money of the bank to O'Leary on the waivers made by the plaintiffs in favor of the bond company. The witness did not see plaintiffs. There was no agreement between them; and plaintiffs are not estopped at this time to claim the preference accorded them by law on the fund in the hands of the port commission, or rather the fund which has been transferred by the commission to the bank. The bank has no preference on the fund, and the plaintiffs have.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be reversed and amended, in so far as appellants are concerned, so as to read as follows: Let there be judgment in favor of J. W. Thompson and against J. P. O'Leary, the board of commissioners of the port of New Orleans, and the Canal Bank & Trust Company in the sum of $12,470.58, with legal interest from December 20, 1915.

And in favor of the American Sheet & Metal Works against the same defendants in the sum of $9,786.24, with interest from December 31, 1915. And in favor of the Carolina Portland Cement Company against the same defendants for the sum of $3,481.86, with interest from October 15, 1916.

Let all of the above amounts be paid by priority and preference out of the fund arising from the contract between J. P. O'Leary and the board of commissioners of the port of New Orleans, and now in the hands of the New Orleans Canal Bank & Trust Company. And let there be judgment in favor of Oliver H. Van Horn and against J. P. O'Leary in the sum of $145.71, with interest from March 24, 1917.

Appellees to pay the costs of court.