BRUNOT, J.
 

 Plaintiff contracted with Michel Bourgeois to build a double cottage and outbuilding. Every formality and requirement of law was complied with. The work was constructed and completed, and the buildings were accepted. Thereafter, and within the legal time limit, the liens of three furnishers of materials and one subcontractor were attested, filed, and recorded. These liens exceeded the sum of the last payment due under the contract, and to avoid liability for the excess thereof, the owner provoked a concursus proceeding, and deposited the amount of the reserved payment in the registry of the court. In this proceeding the owner cited the contractor, the surety on his bond, and the several lienholders. Prom a judgment in favor of plaintiff ordering the cancellation of the liens as prayed for, and in favor of the lienholders and against the contractor and the surety on the bond, except as to Joseph Petrie & Sons, but in favor of Joseph Petrie & Sons and against Michel Bourgeois, the contractor, and in favor of the surety, the New Amsterdam Casualty Company, and against Michel Bourgeois, the New! Amsterdam Casualty Company, alone, has appealed.
 

 Joseph Petrie & Sons, subcontractors, did not appeal, but they have filed a brief, and urge therein, in support of their contention, section 2 of Act 263 of 1916, and section 1 of Act 221
 
 of 1916.
 
 These citations are clerical errors, because Act 263 of 1916 has reference to the vendor’s lien alone, and Act 221 of 1916 is amendatory of the Act of 1910, regulating the business of State Banking Associations, etc. Counsel evidently intended to cite Act 221 of 1914 and Act 262 of 1916. Act 221 of 4914 provides that lien-holders must record their liens within 30 days, and the later act requires the recordation thereof within 45 days after the acceptance of the work. Section 1 of Act 221 of 1914; section 1 of Act 262 of 1916.
 

 In this case plaintiff recorded its acceptance of the work on June 26, 1922, and Joseph Petrie & Sons recorded their lien on August 21, 1922, more than 45 days after the
 
 *1057
 
 acceptance of the work. But counsel eon-' tends that “the surety is limited to such defenses only as the principal on the bond can make,” and that “a furnisher of materials and supplies may assert his claim against the contractor and surety, even though his lien may have been filed after 45 days from the date of acceptance of contract.” These contentions are fully supported by the opinion and decree in the case of Shreveport Mut. Bldg. Ass’n v. Whittington et al., 141 La. 42, 74 So. 591. In that case threé of the furnishers of materials and supplies failed to file sworn statements of their claims with the plaintiff, and a fourth failed to file such statements with the owner, or to record its claim as the law required. The surety company excepted and urged the foregoing omissions in support of its exception. This exception was overruled, but the case went to trial on its merits before another judge of the district, and the exception was there sustained. From this judgment the furnishers of materials and supplies appealed to the Court of Appeal, and the question was certified to this court for instruction.
 

 In this case Petrie & Sons were awarded a judgment against the contractor alone. They did not appeal from this judgment, and no formal application has been filed in this court for an amendment of the judgment. In their brief they have directed our attention to the foregoing authorities, but there is no appeal, application, or plea in the record upon which to base a decree that would affect the judgment as rendered in the trial court. It is true that this is a concursus proceeding, but we know of no law which authorizes us to amend the judgment in such a proceeding in the absence of an appeal therefrom or of an application and prayer for an amendment thereof.
 

 The New Amsterdam Casualty Company, the surety of the contractor, seeks to avoid liability upon the theory that only one witness testified to the correctness of the account of A. Stef Lumber Company, the claim of Petrie & Sons, and the claim of the National Sash & Door Company. We have already disposed of the claim of Petrie & Sons, and it need not be further considered. With reference to the claim of A. Stef Lumber Company, Mr. Reiss testified as follows:
 

 “Q. Of your own knowledge do you know whether that material was used by Mr. Bourgeois in the construction of this building?
 

 “A. Yes, sir.
 

 “Q. How often were you on the job?
 

 “A. I was on the job at the very least three times a week and sometimes more, every week that the job was going on.
 

 “Q. Did you see the lumber of your own company when you were on the job?
 

 “A. Yes, sir.
 

 “Q. That was the lumber that was purchased which appears on this account?
 

 “A. Yes, sir.
 

 “Q. Has the contractor ever disputed that fact?
 

 “A. Never did; no, sir.”
 

 As the contractor was present in court and did not take the stand, this testimony established a prima facie case, and shifted the burden of proof to the surety company and the contractor. As neither contradicted the proof, the judgment of the trial court, as to this demand, is correct.
 

 The National Sash & Door Company, under a contract, sold, and delivered to the contractor millwork to the amount claimed by it. The lower court found that claimant had proved the contract, and that the mill-work had been delivered in accordance therewith and that it was used in the construction of the building. A reading of the testimony and a consideration of the offerings lead us to the same conclusion.
 

 It is contended that the furnishers of materials did not file sworn statements of their accounts with the owner of the building. The filing of such statements is not necessary.
 

 “ ‘Was it necessary for the said defendants (materialmen) to file sworn statements of their accounts with the owner of the building as a condition precedent to recovery of the amounts of such accounts as against the surety in case of default of the contractor ?’ !|! * * The mis
 
 *1059
 
 take which the learned counsel for the surety company, make is in not distinguishing between the owner, between-wbom and the materialman there is no contractual relation, on whose part there is no liability except that created by law against, or .without, his consent, and the surety company who has voluntarily entered into a contract to pay the materialmen in case the contractor does not, and has received a consideration for thus engaging itself.
 

 “In- not one decision of this court has it ever been held that the surety was released by non-service of an account upon the owner; and this court could not possibly so hold unless prepared to hold that the contractor also is released, for the statute in express terms provides that:
 

 •“ ‘The surety herein shall be limited to such defenses only as the principal on the bond can make.’
 

 “This express provision cannot be ignored; and, surely, no one would say that the contractor was released from paying the material-men by the failure'of the latter to serve an account upon the owner. The learned counsel of the surety company seem to think that this statute was enacted in the interest of the surety on the contractor’s bond, whereas the statute expressly declares that the purpose has been simply to require that the bond be given.
 

 “Why the law should be solicitous for the protection of surety companies, the learned counsel- would, we imagine, be embarrassed to suggest any reason.” Shreveport Building Association v. Whittington, 141 La. 41, 74 So. 591.
 

 Finding no error in the judgment appealed from, and for the reasons assigned, the judgment of the trial court is affirmed, at appellant’s cost.
 

 Case finally compromised.