(105 So. 64)

No. 25304.

## FIDELITY HOMESTEAD ASS'N v. KENNEDY & ANDERSON et al.

(May 25, 1925. On Motion to Correct Decree June 22, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Interpleader. ⬡⟹32—All materialmen complying with statute entitled to share funds without preference based on order of filing.**

In concursus proceeding under Act No. 262 of 1916, where owner paid sum due to contractor into court, all materialmen who filed attested accounts with owner held entitled to participate in common fund without preference based on order of time of filing, and to relegate some of them to separate action given by section 2 against surety on contractor's bond, where claims were otherwise well founded, was error.

2. **Mechanics' liens ⬡⟹315 — Claims of materialmen against surety on contractor's bond not affected by breach of contract by owner.**

Whether owner of property had filed agreement with contractor whereby price to be received was more than declared in building contract held immaterial in respect to claims of materialmen against surety on contractor's bond, executed under Act No. 167 of 1912, as amended by Act No. 221 of 1914, and Act No. 262 of 1916.

3. **Interpleader ⬡⟹29—Evidence of agreement between contractor and owner for more than contract price called for should have been admitted as between building association and surety.**

In concursus proceeding under Act No. 262 of 1916, evidence of side agreement between owner of house, payment for which plaintiff was responsible, and contractor for payment of larger amount than contract called for, and of which plaintiff knew, should have been admitted as affecting claims of plaintiff against surety on contractor's bond, as plaintiff would be estopped from denying it was indebted for difference between amount which contractor was to receive and which he actually received.

4. **Mechanics' liens ⬡⟹315—Surety on contractor's bond is liable for attorney's fees.**

Surety on contractor's bond is liable for attorney's fees, under Act No. 225 of 1918, incident to completion and enforcement of contract.

5. **Interpleader ⬡⟹32—Surety on contractor's bond cannot complain of deduction by plaintiff in concursus proceeding for attorney's fees.**

In concursus proceeding, where building association has joined materialmen, contractor, and surety and paid into court amount due under contract, surety held not entitled to complain of deduction by plaintiff of attorney's fees from amount so paid on grounds that claims of materialmen must first be satisfied, in absence of claim that amount is excessive.

**6. Mechanics' liens ⬳315—Service by materialmen of sworn account on owner held not condition precedent to recovery against surety on contractor's bond.**

Service by materialmen of sworn account on owner *held* not condition precedent to recovery against surety on contractor's bond; surety being limited to such defenses only as principal on bond can make.

**7. Mechanics' liens ⬳315 — Claim for extra work between materialman and contractor, but part of general contract, should be allowed.**

Where materialman had subcontract for wiring house for electricity, extra charge for hanging fixtures furnished by contractor, though extra work between himself and contractor, *held*, part of general contract covered by bond, and claim therefor should have been allowed.

**8. Constitutional law ⬳248 — Principal and surety ⬳166—Statute allowing attorney's fees to successful plaintiff, but not to successful defendant, held not to deny equal protection of law.**

Act No. 225 of 1918, requiring surety on bond to promptly pay obligations secured, and providing for attorney's fees, where recovery is for amount of claim, *held*, not unconstitutional as denying equal protection of law in awarding attorney's fees to successful plaintiff and not to successful defendant.

**9. Constitutional law ⬳248—Statute allowing attorney's fees, in action to recover against surety on bond, held not unreasonably discriminatory.**

Act No. 225 of 1918, requiring sureties on bonds to pay obligations promptly and allowing attorney's fees for recovery against them in full, *held*, not violative of state Constitution or Const. U. S. Amend. 14, as unreasonably discriminatory, being equally applied to all sureties an added incentive to surety to pay promptly, being a not unreasonable deterrent of groundless defenses.

**10. Interpleader ⬳32 — Building association not entitled to deduct attorney's fees from amount paid into court.**

In concursus proceeding under Act No. 262 of 1916, where building association joined materialmen claiming liens, the contractor, and surety on his bond, and paid amount due on contract into court, it was not entitled to deduct attorney's fees from amount due, as owner cannot compete for his own incidental claims against contractor with laborers and materialmen.

On Motion to Correct Decree.

**11. Appeal and error ⬳1185—Appellate court may correct clerical error without granting rehearing.**

Appellate court may correct a clerical error in its decree on motion without granting rehearing.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Concursus proceeding by the Fidelity Homestead Association against Kennedy & Anderson, Roberts & Co., Stauffer, Eshleman & Co., and the Globe Indemnity Company and others. From judgment for plaintiff and rejecting the claims of defendants Roberts & Co. and Stauffer, Eshleman & Co. and others, defendants last named and the Globe Indemnity Company appeal. Reversed and remanded, with directions as to part, and modified, amended, and affirmed as to part.

Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for appellant Globe Indemnity Co.

Denegre, Leovy & Chaffe, of New Orleans, for intervener, appellant Stauffer, Eshleman & Co.

Richard B. Montgomery, of New Orleans, for appellant Roberts & Co.

Gerald Netter, of New Orleans, for intervener, appellee Morris Lichtentag.

Meyer S. Dreifus and McLoughlin & West, all of New Orleans, for appellee Fidelity Homestead Association.

John J. Reilley, of New Orleans, for intervener, appellee Hortman Company, Inc.

ST. PAUL, J. Plaintiff entered into a contract with Kennedy & Anderson, by which the latter were to construct a certain building for $5,000, payable in installments of $1,000 each; and the Globe Indemnity Company became surety for the builders under the terms of Act 167 of 1912, as amended by Acts 221 of 1914 and 262 of 1916.

When the building was completed, the contractors had been paid all but $1,000 of the

nominal contract price, and had left *unpaid* the following alleged claims for materials furnished, to wit:

| | |
|---|---:|
| (1) Roberts & Co............................ | $ 933 30 |
| (2) Stauffer, Eshleman & Co................. | 158 09 |
| (3) M. Lichtentag............................ | 46 00 |
| (4) Hortman Company, Incorporated....... | 1,148 15 |
| (5) J. N. Avriett............................ | 389 50 |
| (6) Jahncke Service, Inc.................... | 427 61 |
| (7) N. O. Paint & Color Company........... | 125 25 |
| Total ................................. | $3,227 90 |

Thereupon plaintiff deposited in court the alleged balance due the contractor, less $200, which it retained as attorney's fees, and $50 for costs; that is to say, plaintiff deposited $750 in court, and called all parties into a concursus in accordance with the provisions of Act 262 of 1916, including the contractors, the surety on their bond, and the claimants; so that all parties were before the court asserting against each other their various claims, counterclaims, and defenses, in a series of petitions, supplemental petitions, interventions, answers, and reconventional demands, which fill 85 pages of transcript, but need no further mention at this time.

### I.

The trial judge recognized the right of plaintiff to retain the $200 attorney's fees and $50 for costs. He recognized in full the claim of Hortman Company ($1,148.15) and of Jahncke Service ($427.61). He reduced the claim of Lichtentag to $32, and that of Avriett to $105.75. He rejected absolutely the claim of the N. O. Paint & Color Company. He rejected the claims of Roberts & Co. and of Stauffer, Eshleman & Co. as to any right to participate in the fund deposited in court, but reserved their right to proceed directly against the surety. He ordered that all liens against the building be erased from the mortgage records.

From this judgment the surety, Roberts & Co. and Stauffer, Eshleman & Co. have appealed. Lichtentag has answered the appeal, praying that he be allowed his claim in full ($46), and 10 per cent. attorney's fees under Act 225, of 1918, p. 408, as claimed in the court below, but disallowed. Hortman Company has also answered the appeal, asking 10 per cent. attorney's fees under Act 225 of 1918, as claimed but disallowed in the court below; or, *in the alternative,* for 10 per cent. damages for a frivolous appeal.

But the issues presented by the several contentions made are so many and so varied that it would only confuse if we were to state them all at once; and we will therefore state them only as we reach them, and dispose of them in due course.

### II.

[1] In the first place, it was error on the part of the trial judge to deny to Roberts & Co. and Stauffer, Eshleman & Co. the right to participate in the fund on deposit in court. That fund was due the contractors and belonged to them, and "furnishers of material who file attested accounts with the owner are not entitled to be paid out of the fund in the hands of the owner by preference in the order of time of filing. As long as the money remains in the hands of the owner any furnisher has a right to file his account and to participate in the common fund." French Market Homestead v. Dexheimer, 11 Orleans App. 277, citing Hall v. Wills, 3 La. Ann. 504 (508). See, also, Municipality v. Bell, 4 La. Ann. 121, and Thompson v. O'Leary, 146 La. 843, 84 So. 116.

It was also error on the part of the trial judge to relegate Roberts & Co. and Stauffer, Eshleman & Co. to a separate action against the surety, if their claims were otherwise well founded; for the act provides that—

"The owner shall file a petition in a court of competent jurisdiction citing such claimants, and the * * * contractor * * * against whom said claims are filed, and the surety of said bond, and * * * shall assert whatever claim he has against any or all of them, * * * and require said claimants *to assert their*

*claims,* and all of said claims *shall be tried in concursus."* (Italics ours.)

The manifest purpose of the act is, therefore, that all such claims shall be tried, and, of course, disposed of, at *one* time, and not in a *series* of judgments between individual and individual. It is true that section 2 of the Act of 1916 reserves to every claimant an individual right of action on the bond; but this has nothing to do with his right to assert his claim in the concursus when called in.

But whether or not Roberts & Co. and Stauffer, Eshleman & Co. have any rights against the surety is a matter to which she will revert later on. Suffice it to say, for the present, that they should have been allowed to participate in the distribution of the fund in court.

### III.

The surety contends that it is not liable at all upon the bond, for this, to wit, that plaintiff was having said building erected for account of one Mrs. H. B. Stackhouse; and that, *to the knowledge of plaintiff,* there was a side agreement between the contractor and said Mrs. Stackhouse, whereby the price to be received by the contractor was, not $5,000 as declared in the building contract, but $6,500, of which $1,500 was to be paid by Mrs. Stackhouse, and of which the surety knew nothing, and it complains that the trial judge refused to admit any evidence on that point.

This matter presents two aspects; one as between the surety and the plaintiff, and the other as between the surety and the furnishers of material.

[2] (1) As between the surety and the materialmen such evidence was irrelevant, and could not affect their claims. It is now well settled in this state that the surety on a builder's bond, given in accordance with the requirements of the statute, cannot escape liability towards laborers and materialmen on the ground of some breach of the contract on the part of the owner, or because of some equity which might estop the owner himself from recovering against said surety. First Nat. Bank v. Hudson Construction Co., 156 La. 352, 100 So. 451, and authorities there cited.

[3] (2) But between the surety and plaintiff the situation is different. The laborers and materialmen cannot suffer by the acts of the owner to which they have not consented; but the owner himself may prejudice his claims by some act of his own. Wells v. Fidelity & Deposit Co., 146 La. 169, 83 So. 448; Savings & Homestead Ass'n v. Frank, 146 La. 198, 83 So. 491.

This again presents various phases for consideration: (a) If there was such an agreement between the contractors and Mrs. Stackhouse, and *if Mrs. Stackhouse actually paid the contractors $1,500 more than the contract calls for,* then we cannot see wherein the surety was in any way prejudiced thereby or has anything whatever to complain about. The contract stated exactly what sort of a building the contractor undertook to build, and, if the surety was willing to guarantee that he could and would build such a house for $5,000, then the plain common sense of the situation is that the builder was all the more able to carry out his contract when he received above the nominal contract price *an additional $1,500* with which to pay his bills and thereby relieve his surety to that extent. (b) Again, if such a side agreement existed, but plaintiff knew nothing of it, then plaintiff cannot be prejudiced by the act of an outsider to which it did not consent, nor yet by the act of the contractor himself, since the very purpose of obtaining a surety for the contractor was to secure itself against any act of the contractor prejudicial to its interests, and the very undertaking of the surety was that the contractor would do nothing prejudicial to those interests. Hence, if such side agree-

ment existed, but was unknown to plaintiff, and if Mrs. Stackhouse did not carry out her part of the agreement, then the surety *may be* entitled to an equitable subrogation to the contractor's claim against her for the unpaid balance, though as to this we express no opinion. But be that as it may, plaintiff could in no way be made to suffer by reason of something to which it did not consent. (c) If, however, such a side agreement did exist, *and plaintiff knew of it*, then the fact is that the *true price* to be paid the contractor was $6,500, and not $5,000; and plaintiff, who held itself out to the surety as the party responsible for the payment of the contract price, *is estopped* from denying that it is still indebted to the contractor for the difference (whatever it may be) between the $6,500 which the contractor was to receive and the amount which he actually did receive from all sources.

We therefore think that the trial judge erred in excluding, as between the surety and plaintiff, evidence as to the alleged side agreement, as to plaintiff's knowledge of it, and as to whether anything (or how much) was paid the contractor on that account. And the case will have to be remanded on that point; the inquiry to be simply whether the plaintiff owes the contractor anything above the $5,000, less payments.

### IV.

The surety further complains that plaintiff should have deposited the whole $1,000 still due the contractor without deducting attorney's fees and costs; and should then have made its claim, if it had any, in the concursus proceedings. It urges two grounds for this contention: (1) That it is not liable at all for attorney's fees; and (2) that in any event the claims of the materialmen must first be satisfied before it can be liable for anything to plaintiff.

[4] (1) The first contention is not well founded. The attorney's fees here claimed are not attorney's fees under Act 225 of 1918, p. 408; but they are claimed under the building contract which provides (clause 6) that "attorneys' fees incident to the completion and enforcement of said contract shall be a charge against said contractor and surety." Since the Globe Indemnity Company signed the contract with that written into it, it is clear that it is liable accordingly. Even if the contract had merely provided for attorney's fees to be paid by the contractor, without adding "and the surety," the surety would none the less have been liable; "the reason is simple; it is part of the obligation for which he became surety. And as long as the amount for which he became surety is not exceeded, he may be condemned for any of the obligations assumed by the principal." Conn v. United States Fidelity & Guaranty Co., 13 Orleans App. 99, 102. But, of course, a surety is not liable beyond the amount for which he bound himself (Meyer v. Bichow, 133 La. 982, 983, 63 So. 487; Conn v. U. S. Fid. & Guar. Co., supra), unless it be for costs of suit, interest from judicial demand, and statutory penalties; these being imposed by law and not limited by, but in excess of, his obligation as surety.

[5] (2) It may be true that the owner cannot compete with laborers and materialmen for the balance due the contractor, and that he should deposit in court the whole thereof without deduction, *except of what may be necessary to complete the building*. But we do not see how the *surety* on the contractor's bond can raise that question, or what interest it has in doing so, since it does not claim that the amount is excessive.

In this connection see the *decree* in Equitable Real Estate Co. v. National Surety Co., 133 La. 448 (475, 476), 63 So. 104, whereby the owner was ordered to deposit in court the amount retained for demurrage, and then given judgment against the surety for the very same amount as demurrage due; but

recoverable only *after* the claims of laborers and materialmen (and, of course, not beyond the amount of the bond).

### V.

Stauffer, Eshleman & Co. are here on their own appeal. Their claim was rejected because they did not serve their claim upon the owner and record it in the mortgage office within 45 days after the completion of the building as required by the act aforesaid.

[6] Regardless of what any other court may have at one time said, and with what good reason, the fact remains that in Shreveport Mutual Bldg. Ass'n v. Whittington, 141 La. 41, 74 So. 591, this court held that the service of a sworn account on the owner was *not* a condition precedent to recovery against the surety on a contractor's bond; and *the reason* there given by the court is equally applicable to the failure to record the claim in the mortgage office, to wit, that by the terms of the statute "the surety * * * shall be limited to such defenses only as the principal on the bond can make." And on the strength of that ruling materialmen have since very generally neglected, as a useless formality, the service of accounts upon owners, and even any recordation thereof in the mortgage office. It would therefore be wholly improper to change that ruling without warning; and any desired change should be sought at the hands of the lawmaking department of the government. Accordingly, this court has again reaffirmed that doctrine in Audubon Homestead Ass'n v. Stef Lumber Co. (our No. 25904) 105 So. 62, ante, p. 1054, and we adhere to it now.

The claim of Stauffer, Eshleman & Co. will therefore be allowed against the surety.

### VI.

[7] Lichtentag is here on an answer to the appeal. He complains that the trial judge cut $14 off his bill, as being *extra work* not covered by the contract. We think the trial judge misunderstood this. Lichtentag had the subcontract for *wiring* the house for electricity. The $14 was a charge for hanging the electric fixtures furnished by the contractor. This was truly *extra work* between himself and the contractor, but it was, of course, part of the general contract, and therefore covered by the bond. His claim should be increased accordingly.

[8, 9] He also claims in his answer to the appeal 10 per cent. attorney's fees, under Act 225 of 1918, p. 408. That act provides, in substance, that every surety on a bond, given in any judicial proceeding, or on a building contract, "or otherwise," shall promptly pay any obligation secured by said bond, should the principal on such bond fail to do so; otherwise such surety shall be liable to a claimant under said bond for an attorney's fee of 10 per cent. on the amount claimed; provided, however, that said attorney's fee shall be due only where the recovery is for the full amount of the claim; and provided, further, that amicable demand in writing be made upon, and received by, both principal and surety at least 30 days before suit.

The surety challenges the constitutionality of said act as denying it the due process of law and equal protection of the law guaranteed by both state and federal Constitutions.

The surety relies upon Gulf, C. & S. F. R. Co. v. Ellis, 165 U. S. 150, 17 S. Ct. 255, 41 L. Ed. 666, wherein an act of the Legislature of Texas was held repugnant to the Fourteenth Amendment, which allowed a plaintiff to recover attorney's fees in certain classes of cases, but *only where defendant was a railroad company.* The act was adjudged to be invalid because it singled out a particular class of debtors and imposed this burden upon them without any reasonable ground existing for the discrimination. The classification was held to be arbitrary, because having no relation to any special privileges granted

to this class of corporations, *or to the peculiar features of their business.*

The above interpretation of that case is the interpretation given it by the Supreme Court of the United States itself in Missouri, K. & T. R. Co. v. Cade, 233 U. S. 642, 34 S. Ct. 678, 58 L. Ed. 1135. And accordingly we must consider as having been said merely *arguendo* whatever was said about the act not affording equal protection of the laws because of the fact that, "if litigation terminates adversely to them (railroad companies as defendants) they are mulcted in the attorney's fees of the successful plaintiff; if it terminates in their favor, they recover no attorney's fees. * * * They do not stand equal before the law; they do not receive its equal protection."

But, at any rate, if what was thus said was any part of the *ratio decidendi* in that case, then the case must be considered as having been overruled on that point by the later case of Missouri, K. & T. R. Co. v. Cade, supra, wherein the court expressly held the contrary, thus:

"If the classification is otherwise reasonable, the mere fact that attorney's fees are allowed to successful plaintiffs only, and not to successful defendants, does not render the statute repugnant to the 'equal protection' clause."

And the court recognized that there was ground for distinguishing between the *actor* and the *reus* (plaintiff and defendant) and for making those differences the basis of distinctive treatment respecting the allowance of attorney's fees.

Again, said the court:

"Even were the statute to be considered as imposing a penalty upon unsuccessful defendants in cases within its sweep, such penalty is obviously imposed as an incentive to prompt settlement of small but well founded claims, and as a deterrent of groundless defenses, which are the more oppressive where the amount involved is small [citing cases where such penalties had been upheld by the court].

"But we think it is not correct to consider this statute as imposing a penalty; * * * the purpose is merely to require the defendant to reimburse the plaintiff for a part of his expenses, * * * it imposes only compensatory damages upon a defendant who, in the judgment of the Legislature, unreasonably delays and resists payment of a just demand. The outlay for an attorney's fee is a necessary consequence of the litigation, and * * * it is reasonable to impose it upon the party whose refusal to pay a just claim renders the litigation necessary. * * * Numerous cases in the state courts have sustained similar legislation [citing authorities]."

See, to the same effect, Missouri, K. & T. R. Co. v. Harris, 234 U. S. 412, 34 S. Ct. 790, 58 L. Ed. 1377. See, also, Missouri Pac. R. Co. v. Larabee, 234 U. S. 459, 34 S. Ct. 979, 58 L. Ed. 1398.

Act 225 of 1918, p. 408, is therefore not open to the objection that it denies to any person the equal protection of the law because it awards attorney's fees to a successful plaintiff, but does not award them to a successful defendant.

Nor is it open to the objection that it singles out a particular class of debtors and imposes a burden upon them *without any reasonable ground existing for the discrimination.* True, it singles out *sureties* on bonds; but it does not discriminate between such sureties. Its provisions apply equally to all persons similarly situated, be they individuals or be they corporations, and regardless of whether they become sureties on bonds only incidentally or as a regular business.

Nor is the discrimination which the statute makes between sureties on bonds as defendants and other defendants not sureties on bonds a purely arbitrary one without any reasonable ground existing therefor. For the object of requiring a *surety* for an obligation is to secure a *prompt and sure* performance thereof. But the Legislature may well have found that sureties on bonds given in judicial proceedings or on building contracts, "or otherwise," often resist payment of just claims against them upon the flimsiest

of pretexts; and by technical pleas and groundless defenses do often delay payments beyond all reasonable limits. There was therefore reasonable ground for providing "an incentive to prompt settlement, * * * a deterrent of groundless defenses." And the distinction between such defendants and other defendants *is* based on *features peculiar to that business.*

Our conclusion is that the statute does not deny defendant the equal protection of the law, or deprive it of property without due process of law, and that Lichtentag is entitled to recover of the surety 10 per cent. attorney's fees on the amount of his claim.

## VII.

Hortman Company is here on an answer to the appeal. It also claims the same attorney's fees under the statute; and for the reasons assigned above they will be allowed. Its claim for damages for frivolous appeal is urged only *in the alternative,* and therefore requires no further attention.

## VIII.

Roberts & Co. are here on their own appeal. We have already passed upon their right to participate in the distribution of the fund deposited in court. Ante, par. II. In their pleadings in the court below they asked for no judgment against the surety, and hence could have none there, and, of course, can have none here. The trial judge reserved their right to proceed against the surety in an independent action, and that was correct. The surety (who is here on its own appeal) asks that their claim be rejected *absolutely,* on the ground that they did not serve their claim on the owner or record it in the mortgage office within 45 days after the completion of the building. For the reasons given in connection with the claim of Stauffer, Eshleman & Co. (ante, par. V), the surety is not entitled to that relief.

[10] They also complain of the refusal of the trial judge to compel the plaintiff to deposit the whole $1,000 due to the contractor; i. e., to deposit the $250 retained as attorney's fees and costs, in addition to the $750 already deposited.

In Equitable Real Estate Co. v. National Surety Co., 133 La. 448, 63 So. 104, this court held that—

"In provoking a concursus, under Act No. 134 of 1906, the owner of a building has no right to retain, from the balance due under the contract, an amount due to him by the contractor for demurrage, but should pay the same into court, since the laborers and materialmen are entitled to be paid, by preference over the owner from such balance."

In French Market Homestead v. Dexheimer, 11 Orleans App. 277, 280, the Court of Appeal said:

"But the plaintiff is not entitled to retain in its funds, out of the funds deposited, the sum * * * claimed of the contractor as demurrage, nor any amount for attorney's fees for services rendered herein. Act 134 of 1906 provides that the accounts of claimants shall be paid in preference to the demands of the owner."

And Act 262 of 1916 contains the same provision as Act 134 of 1906. Nothing which we said in Natchitoches Sweet Potato Co. v. Perfection Curing Co., 153 La. 916, 96 So. 808, conflicts with the above. All that we said in that case was (in effect) that there was nothing due the contractor by the owner under the contract when the contractor had defaulted, and it would require more than the unpaid balance of the contract price to complete the building. In other words, there was no balance due under the contract because the contractor had not earned it by completing the contract. But, where the whole contract price is earned by reason of the contract having been completed, and there remains a balance due the contractor thereon, then the owner cannot compete, for his own incidental claims against the con-

tractor, with the laborers and materialmen whose labor and material have gone to enable the contractor to complete the building. The fact of the matter is that the provision giving a preference to laborers and material over the owner was inserted in the act of 1906 *ex industria*, and for the express purpose of overcoming two decisions of the Court of Appeal to the contrary, to wit, Teutonia Loan & Bldg. Co. v. Bush, 1 Orleans App. 30, and People's Homestead Ass'n v. Staub, 3 Orleans App. 93 (writ refused by Supreme Court March 15, 1906).

And, of course, the owner cannot indirectly obtain such a preference by merely withholding the amount of his claims against the contractor from what is due the contractor and depositing only the difference, thereby, of course, lessening the amount coming to the laborers and materialmen.

Plaintiff must therefore be ordered to make a further deposit of that sum in court, but, in view of the fact that plaintiff has neither appealed nor answered the appeal, we find ourselves unable to give it at this time any such relief as in Equitable Real Estate Co. v. National Surety Co., supra. However, this part of our judgment is on the appeal of Roberts & Co., and *decides nothing* between plaintiff and the surety. On the contrary, the surety provoked a ruling on the rights between them, and we were compelled to pass upon same adversely to its contentions (see ante, par. IV), but plaintiff must assert its claim in another form.

### Decree.

The judgment appealed from is therefore amended as follows, to wit:

(1) By requiring plaintiff to deposit in court for distribution between the various claimants the further sum of $250.

(2) By recognizing the claim of Roberts & Co. for $933.30, and their right to participate *pro rata* with all other claimants in the distribution of the fund deposited in court.

(3) By recognizing the claim of Stauffer, Eshleman & Co. for $158.09, and their right to participate *pro rata* with all other claimants in the distribution of the fund deposited in court; *and* by giving them judgment for said sum with legal interest from judicial demand and costs *in solido* against the Globe Indemnity Company and the partnership of Kennedy & Anderson (and against the individual members thereof, Charles F. Kennedy, Walter R. Anderson and Harral Anderson, each for one-third thereof), subject, however, to credit for their pro rata of the fund distributed.

(4) By giving Hortman Company, Incorporated, further judgment against the Globe Indemnity Company for 10 per cent. attorney's fees on the full amount of their claim.

(5) By increasing the amount allowed Morris Lichtentag from $32 to $46; *and* by giving him further judgment against the Globe Indemnity Company for 10 per cent. attorney's fees on the full amount of his claim.

(6) By limiting the total liability of said Globe Indemnity Company to the sum of $2,500, except for interest from judicial demand (October 3, 1921), for costs of court, and for attorney's fees under Act 225 of 1918.

And as thus amended the judgment appealed from is *affirmed*, except as hereinafter provided.

It is further ordered that the ruling and rulings of the trial judge excluding evidence of an alleged side agreement between Mrs. H. B. Stackhouse and Kennedy & Anderson, for an addition to the contract price, be reversed; and the case is now remanded to the district court for the reception of evidence on that issue; and for the adjustment of the respective rights of plaintiff and said Globe Indemnity Company under the facts so disclosed; also for adjustments of the costs incurred between them.

It is further ordered that the costs of this appeal be paid one-half by plaintiff and one-half by Globe Indemnity Company. ·

O'NIELL, C. J., absent.

### On Motion to Correct Decree.

PER CURIAM. [11] The Globe Indemnity Company, defendant and appellants, has filed a motion suggesting a clerical error in our decree. Mover points out that in the penultimate paragraph of the decree the case is remanded for the admission of testimony concerning "an alleged side agreement between Mrs. H. B. Stackhouse and Kennedy & Anderson," while the facts are that the parties to said agreement with Kennedy & Anderson were Mr. and Mrs. Horace Stackhouse, and mover prays that the necessary correction be made. We have re-examined the record, and think the prayer of the motion should be granted. In the original answer filed by defendant (mover herein) it was alleged that Mrs. Stackhouse was a party to the agreement. This was an error, and the necessary correction was made in a petition to make parties filed by said defendant, wherein it was shown that the parties to the agreement were Mr. and Mrs. Horace Stackhouse. This court may correct a clerical error at any time without granting a rehearing. American Nat. Bank v. Reclamation Oil Producing Assn., 156 La. 652, 101 So. 10; State v. Williams Cypress Co., 132 La. 949, 61 So. 988, Ann. Cas. 1914B, 1290; Mahoney v. Mahoney, 41 La. Ann. 135, 5 So. 645.

For the reasons assigned, the decree herein handed down is amended and corrected by substituting, in the penultimate paragraph thereof, for the words "Mrs. H. B. Stackhouse," the words "Mr. and Mrs. Horace Stackhouse," and, thus amended, the said decree is to stand as the final decree of the court.