brokers were only employed to negotiate a single contract.

In the case of Allen v. Sundins, 158 English Reports (Exchequer) 827, the commission on a renewed charter was allowed because of a custom among shipbrokers that an "introducing" broker was entitled to receive renewed commissions on every renewal of a charter originally effected through him. The ruling is manifestly not pertinent to the instant case.

The citation from 32 C. J. 1078, is to the effect that an insurance agent is entitled to a commission on renewal premiums of insurance where his contract provides for such commission, but he is not entitled to such commission if his contract does not provide for same.

We fail to see wherein that citation can have any pertinent bearing on this case.

The same author, volume 9, p. 519 says, that the agency of a broker whose employment is definitely limited by his contract terminates with the expiration of the time specified, unless, by virtue of the contract, the agency continues thereafter until revoked.

Our conclusion is that the three contracts on which commissions are claimed cannot in any sense be construed or held to be renewals or duplications of the first or initial contract.

The judgment appealed from is therefore affirmed.

(125 So. 871)

No. 29851.

**BELL v. LIEBER et al.**

Jan. 6, 1930.

Spearing & Mabry, of New Orleans, and Theus, Grisham, Davis & Leigh, of Monroe, for appellants Lieber and United States Fidelity & Guaranty Co.

Munholland & Munholland, of Monroe, for appellees Bell and Stewart & Haynes.

McHenry, Montgomery, Lamkin & Lester, of Monroe, for appellees Parlor City Lumber Co., Dixie Roofing Co., and Allen.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellee Slagle-Johnson Lumber Co.

Geo. Gunby, of Monroe, for appellees Perry Lime & Cement Co. and Hinkle.

LAND, J. The appeal in this case was taken by the owner, the contractor, and the surety company from a judgment in solido rendered against them in a concursus proceeding in favor of plaintiff and other furnishers of materials.

Appellees have answered the appeal, and pray that the judgment in their favor be affirmed, with 10 per cent. damages against appellants for a frivolous appeal.

The concursus proceeding in this case was provoked by plaintiff, under the provisions of Act No. 298 of 1926.

On February 21, 1927, the owner, Ben Lieber, entered into a contract with C. E. Andrews for the construction of a reinforced concrete and brick garage building on Grand street, Monroe, La., in accordance with certain plans and specifications, but which were not attached to the contract.

A bond, executed on February 25, 1927, by the contractor, as principal, and by the United States Fidelity & Guaranty Company, as surety, was annexed to the contract, and both were recorded in the mortgage office of Ouachita parish on June 25, 1927.

The original plans and specifications called for a two-story building, but were not filed in the mortgage office. On April 5, 1927, an amendment or supplement to the original contract was made for the purpose of adding a third story to the building at an increased cost to the owner of $20,600. No additional bond was taken by the owner, and the amended contract was not recorded.

On July 5, 1928, formal acceptance of the building was filed for record by the owner.

1. It is contended by the owner that, as two distinct and separate building contracts were entered into between him and the contractor, he was relieved, as owner, of all personal liability to the materialmen, as the first contract and the bond furnished thereunder to secure the payment of their claims were recorded.

The owner also contends that, as the materials were furnished under the two contracts, and were used confusedly in the construction of the building, and as the evidence does not show the amount used under each contract, there can be no judgment against him, or the surety, and no lien can be enforced against the property.

We do not consider the two contracts as separate and distinct, as they are not contracts for two separate and distinct buildings on the same lot. The entire building stands upon the same foundation. Only one roof covers it overhead. The second contract calls for a mere addition of a third story to the original two-story building, and is therefore a supplemental contract.

As the owner has formally accepted the building, it is immaterial, so far as he is concerned, whether or not materials furnished under the two contracts were used confusedly in the building.

Nor can the surety be heard to urge such complaint in the present case, as a release from liability, because of the compromise agreement entered into by the surety, the owner, and the contractor on October 8, 1928.

Under the express terms of this agreement, the surety received the sum of $17,000 from the owner, and bound itself to discharge all recorded liens on the building for claims for labor and material, as well as the lien filed by the contractor for the amount due him by the owner, and "to hold and save the said owner

completely harmless from any of said hereinabove mentioned liens and the debts on which said liens are based."

The contractor also assigned to the surety all of his claim against the owner, and released the owner from all liability to him.

The surety is liable to the appellees, the furnishers of materials used in the building, whether such materials were used confusedly or not under the two contracts, since the surety has so bound itself under the special compromise agreement.

■ The owner, having received the value of these materials in the building, cannot escape payment for same, in so far as the materialmen are concerned, under the pretext of separate contracts or confused use of such materials, since the owner brought about this situation through his own voluntary act. The laborers and materialmen cannot suffer by the acts of the owner to which they have not consented. Fidelity Homestead Ass'n v. Kennedy & Anderson, 158 La. 1059, 105 So. 64.

■ Neither the failure of the owner to record timely the contract and bond, nor the failure of the furnisher of labor and material to preserve his lien against the property, can deprive him of his action against the surety on the bond. Act No. 298 of 1926, §§ 7, 14; Audubon Homestead Association v. A. Stef Lumber Co., 158 La. 1054, 105 So. 62; Madison Lumber Co. v. Bachemin, 166 La. 1066, 118 So. 141.

■ 2. We shall take up next the issue as to whether appellees' liens were validly recorded for material used in the construction of the building.

This is a matter that does not concern either the contractor or the surety, as the owner alone is affected by the recordation of the liens.

■ Under section 2 of Act No. 298 of 1926, when a building contract has been reduced to writing, a surety furnished, and the contract and bond recorded, furnishers of labor and material have 30 days after the recordation of acceptance of the building by the owner within which to record their liens.

In our opinion, there is but one contract in the case that is binding upon the furnishers of material, as far as the recording of their liens is concerned, and that is the contract of February 21, 1927, for a two-story, reinforced concrete and brick garage. This contract, with the bond annexed, was duly recorded on June 25, 1927. The acceptance of the building by the owner was recorded on July 5, 1928. The recordation of the contract and bond was full legal notice to the furnishers of material that they had 30 days after the recordation of the acceptance of the building by the owner within which to record their liens, and, acting upon the faith of the public records, each of the appellants recorded his lien within 30 days after the acceptance of the building. Therefore these are valid liens, under section 2 of Act No. 298 of 1926.

As the building was completed after the supplemental contract of April 25, 1927, which was not recorded, and as the liens were not all recorded in this case within 60 days after the date of the last delivery of material upon the property, appellants contend that they are invalid, under section 12 of Act No. 298 of 1926.

Such contention by the owner cannot be permitted to affect, either in law or in equity, the validity of the liens, since appellees have acted upon the faith of the only contract and bond recorded in the case. The surety, on the other hand, is not concerned in such recordation.

■ 3. Appellants complain that the lower court erred in awarding judgment in favor of the appellee, Dixie Roofing Company, Inc., for the item of $487.40, the item being "sheet

metal contract on Ben Lieber job located on South Grand Street, Monroe," as the contract does not show the amount or character of the material, or the price.

Ordinarily, this claim would not be sufficiently detailed, under Act No. 298 of 1926, § 2, but, in this particular case, the surety has agreed to pay this and other recorded liens, without exception, under the special compromise agreement of October 8, 1928, made after the concursus proceeding was filed. Each of the claimants testified that all material shown on his account had been ordered by the contractor and delivered upon the premises on which the building was being erected. C. E. Andrews, the contractor, also swore that the accounts of the claimants were correct, and that all of the material shown thereon had been delivered and used in the construction of the building.

None of the claimants has attacked the claim of the Dixie Roofing Company, Inc., as insufficient in detail or otherwise. The owner received the value of the sheet metal work in the building, and the surety is bound on its bond for this claim, whether or not there is any duly recorded lien in the case.

4. Appellants also complain that the award of $1,250 attorney's fee for provoking the concursus is grossly excessive, and, if any fee should be allowed at all, it should be reduced to $250.

Demand was made by C. C. Bell, the claimant who provoked the concursus, for an attorney's fee to be paid by the surety, under the provisions of section 10 of Act No. 298 of 1926, and testimony was offered as to the amount and value of the services rendered by the attorneys. It is provided in this section that: "In any concursus proceeding, the attorney of the owner or the attorney of the person provoking the concursus, if the owner has not provoked same within ninety days after the filing of his acceptance or recordation of notice of default of the undertaker, shall be entitled to a prior fee, to be recovered against the fund deposited or against the surety, but this fee shall not be paid in preference to the claims of sub-contractors, journeymen, cartmen, truckmen, laborers, or materialmen," etc.

More than 90 days had elapsed from the recordation of the owner's acceptance without either of the appellants, the owner and surety, making any move toward a settlement of the claims by concursus or otherwise. It became necessary, therefore, that steps be taken to collect the money owed to these appellees. The amount of claims involved in this case is $12,690.98. The surety received in cash from the owner $17,000 for disbursement among the claimants. Instead of paying out this sum in accordance with its obligation and agreement, the surety has attempted in vain to compromise the accounts of the claimants in this case at from 80 to 90 per cent. on the dollar, thereby protracting the litigation. Some of the claimants were settled with on this basis. The surety does not contend that it has not a sufficient sum left on hand to pay the claimants, appellees, and the attorney's fee. Nor does the record show that there is any such deficiency. We must presume, therefore, that the funds in the hands of the surety, received from the owner, are sufficient to pay these claims, including the attorney's fee.

Considering the amount involved, and the services rendered by plaintiff's attorneys, in the lower court and in this court, the fee allowed is a reasonable one, and should be paid by the surety.

5. Judgment was rendered against the owner, the contractor, and the surety company, in solido, and in favor of each of the appellees herein in the amount of his respective

claim, together with legal interest thereon and the cost of filing and recording same. There was further judgment in favor of E. G. Hinkle and Perry Lime & Cement Company against the defendants, in solido, for the costs incurred in prior suits abated by the order of the court upon filing this concursus, and against the surety for 10 per cent. attorney's fee. There was judgment also in favor of Munholland & Munholland, attorneys for the plaintiff, C. C. Bell, and against the surety for $1,250 as attorney's fee for provoking the concursus.

The liens and privileges of all the claimants were recognized by the judgment against the building and lot of ground on which it stands to secure payment of their claims.

In the assignment of errors made in appellants' brief, it is stated that the court erred in awarding Slagle-Johnson Lumber Company, Inc., $524.62, with 5 per cent. interest from May 24, 1928, for the reason that the amount of the account is $510.76, and $13.86 had been added to it as interest at the rate of 8 per cent. to make the total sum of $524.62.

At the foot of this account is the printed statement that "8% interest per Annum (is) Charged on All Post Due Accounts." Interest at the rate of 8 per cent. can be proved only by the written agreement of the parties. Rev. Civ. Code, art. 2924. The mere placing of the conventional rate at the foot of an account is not sufficient. The account of Slagle-Johnson Lumber Company must be reduced to $510.76, with legal interest from May 24, 1928, until paid.

Appellants also contend that the court erred in awarding E. G. Hinkle judgment for $23.20, court costs, and Perry Lime & Cement Company only $21.40, court costs, in the suits abated when the concursus proceeding was filed. The evidence shows that the costs amounted to $23.20 in each of these cases, and the correction must be made.

6. It is finally contended by appellants that the court erred in signing a decree against appellant bond company in favor of both the lienors, appellees, and the owner, without making a provision that payment by the bond company to appellees would discharge its liability under the decree in favor of the owner.

We decline to make the amendment suggested, for the reason that the surety company and owner have adjusted their differences by special compromise agreement, entered into since the institution of the concursus proceeding, the surety company and owner having mutually discharged each other from liability, upon receipt by the surety company of $17,000 from the owner. The owner and surety have made a special law of settlement between themselves, which we do not feel authorized to change.

7. This is not a proper case for the allowance of damages for a frivolous appeal, and such damages are refused.

It is ordered that the judgment appealed from be amended in the following particulars:

(a) Judgment in favor of Slagle-Johnson Lumber Company, Inc., is reduced from $524.62 to $510.76, with legal interest from May 24, 1928, until paid.

(b) Judgment for court costs in favor of Perry Lime & Cement Company is increased from $21.40 to $23.20.

It is now ordered that the judgment appealed from, as amended, be affirmed.

O'NIELL, C. J., absent.
ROGERS, J., concurs in the decree.