CLIFFORD F. FAVROT SUPPLY CO., INC., v. BACHEMIN & UNITED STATES FIDELITY & GUARANTY CO.

(February 25, 1929. Opinion and Decree.)
(March 18, 1929. Rehearing Refused.)
(April 23, 1929. Writ of Certiorari and Review Granted by Supreme Court.)
(July 1, 1929. Opinion and Decree Supreme Court.)

Sanders, Baldwin, Viosca and Haspel, of New Orleans, and Edward Dubuisson, of Opelousas, attorneys for plaintiff, appellant.

Spearing and Mabry, of New Orleans, attorneys for defendants, appellees.

JONES, J. On June 18, 1923, the Sixth District Building and Loan Association, as owner, made two separate contracts with Bachemin to build for $7,100 each, two houses on Roman Street between Cadiz and Jena, on adjoining lots, one lot described as being one hundred and twenty feet from Jena and the other one hundred and twenty feet from Cadiz Street. The U. S. Fidelity & Guaranty Company signed both contracts as surety under Act No. 139 of 1922. Plaintiff in this case, who furnished material for the "Roman Street job" in the sum of $369.15, sues the contractor and his surety on both bonds for this amount. Attached to petition are ten material bills for brick, sand, lime, etc., running from October 2, 1923, to November 2, 1923, eight of which are addressed to P. J. Bachemin, "Roman and Jena Streets" and the other to him on "Roman between Jena and Cadiz Streets."

After filing an exception of vagueness, which was properly overruled, the contractor disappeared from the suit and there was judgment by default against him for the full amount.

The surety company, having obtained the contracts and bonds sued on by a prayer for oyer, then filed exceptions of vagueness and inconsistency of demand, which were properly overruled.

It then answered admitting that it had signed as surety the contracts which had been made by the Sixth District Building and Loan Association and Bachemin—one for the account of A. Picone and the other for account of Joseph Reyer, but it urged two special defenses:

First, that it had been released by plaintiff's failure to record its claim in the mortgage office within thirty days from acceptance of contract.

Second, that its liability on each bond was limited to the materials used in the building which that bond covered. It finally prayed for judgment in its favor against Bachemin if the court should find that it was liable under the circumstances.

The trial judge correctly decided with plaintiff that there was nothing in the first defense, as it had been repeatedly held that the filing of claims in the mortgage office within thirty days was not necessary in order to hold the surety. On this point see:

Shreveport Mutual Bldg. Assn. vs. Whittington, 141 La. 41, 74 So. 591.

Audubon Homestead Assn. vs. A. Stef Lumber Co. et al., 158 La. 1054, 105 So. 62.

Fidelity Homestead Assn. vs. Kennedy & Anderson, 158 La. 1069, 105 So. 64.

Madison Lumber Co. vs. Bachemin, 166 La. 1066, vol. 118, No. 5, So. Rep., p. 141.

The trial judge maintained the second defense on the ground that plaintiff failed to show how much material went in each building; that such showing was essential to maintenance of this special right granted by a special law under the doctrine of "strictissimi juris."

The evidence shows the lots were vacant and that they were located in the middle of the block, with no dividing line between them, that goods were ordered for the Roman Street job and were delivered somewhere on one or the other of the two lots, but no separate account was kept for the materials. There is no proof as to how much material was used in each building and the sole question before us is the necessity vel non of such proof under all the existing circumstances.

In the case of Graphic Arts Building Company vs. Union Indemnity Company et al., 163 La. 1, 111 So. 470, the plaintiff entered into a building contract for the construction of a building in the City of Shreveport on which the Union Indemnity Company furnished a bond as surety. The Koerner Engineering Company furnished certain materials which it delivered for use in the building. Thereafter, a concursus was provoked and on the trial of the case it appeared that some of the materials furnished by the Koerner Engineering Company were not used in the building. The Court, in allowing the full claim of the materialman, said:

"In these circumstances we do not think it was required of the appellant to follow up the shipment of the materials furnished and to see that all of such materials actually went into the building being constructed. * * *

"The contractor is unquestionably liable for the material furnished and delivered by the appellant and used by him. He could not be heard to deny his liability under the evidence.

"The liability of the surety company in this instance is coequal with that of the contractor."

Reasoning by analogy, as the materials were not ordered specially for either job but simply for the Roman Street job, it was not legally essential for the materialman to follow up the shipment of the materials furnished by him in order to see which of the materials went into one building and which went into the other. Had the plaintiff proceeded to sue the surety company and the contractor alleging that it had furnished the goods and materials on one of the jobs only, under the evidence presented and the holding in the case of Graphic Arts Building Company vs. Union Indemnity Company, supra, plaintiff would have been entitled to recover. Therefore, it makes no difference that the two contracts and bonds are sued on. Delivery and use having been shown and no plea having been made that the bonds were exhausted, the surety, who had bound and obligated itself to pay for the materials used in the buildings in the event that the contractor failed to do so, has certainly suffered no damages.

The fact that the plaintiff alleged in its petition and showed that two contracts were made by the same surety, does not in any way prejudice the rights of the surety company. Under the provisions of Act 139 of 1922 (the building contract law, which applies in this case), the surety is limited to such defenses as the contractor could make. The contractor apparently recognized that he could not make this defense and therefore, practically confessed judgment.

If the contention of the surety company be correct, that plaintiff must show amount of material delivered on each lot, then plaintiff, under the peculiar circumstances of this case, would have had to call on a surveyor to ascertain the dividing line between the two lots as there was nothing to show the boundaries. The surety company is in exactly the same position as if there had been only one contract and one bond and he certainly is not damaged as the contractor admittedly owes the indebtedness. The contractor could not possibly urge such a defense because he, of all men, knows what material was used in each house. The law was intended to protect the material furnisher and it specifically provides that the surety company can urge no defense which the contractor cannot urge. To permit the surety company to escape liability on such a narrow technicality would largely nullify the purpose and intent of the law and would be contrary to the spirit and purpose of the act as shown by many decisions of the Supreme Court and the other appellate courts of this State.

In Haynesville Lumber Co. vs. Casey et al., 165 La. 1067, vol. 116, So. Rep., No. 559, the court said, on page 560:

"It was not required of the plaintiff to show that every plan sold and delivered to the contractor for use in the school building was actually so used. If that were the rule in actions by materialmen against the contractor and surety, then the furnishing of a bond to secure materialmen would be an idle formality."

And in Fidelity Homestead Association vs. Kennedy & Anderson, 158 La. 1059, 105 So. 64, the Court said this:

"* * * but the Legislature may well have found that sureties on bonds given in judicial proceedings or on building contracts, 'or otherwise,' often resist payment of just claims against them upon the flimsiest of pretexts; and by technical pleas and groundless defenses do often delay payments beyond all reasonable limits * * *."

The Supreme Court, in the case of Madison Lumber Co. vs. Bachemin et al., 166 La. 1066, decided July 2, 1928, Southern Reporter, vol. 118, page 141, in an exactly similar suit where a different material furnisher had sued the same contractor and same surety for material furnished for these very two houses, gave judgment for plaintiff. It is true that in that case the court said there was no doubt that the lumber sold and delivered for each job was actually used on that job, but the court found no irregularity in combining the two contracts and the two bonds in one suit.

Defendant cites the case of Silver vs. Harris et al., 165 La. 83-91, 115 So. 376. We do not think that case in point, as the plaintiff there was a labor foreman and only one contract was involved in that special suit.

For above reasons, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Clifford F. Favrot Supply Co., Inc., and against the defendants, Paul J. Bachemin and the United States Fidelity & Guaranty Company, jointly and in solido, in the full sum of three hundred sixty-nine and 15-100 dollars ($369.15), with legal interest from November 6, 1923, until paid, and all costs.

It is further ordered, adjudged and decreed that there be judgment in favor of defendant, United States Fidelity & Guaranty Company, over and against the defendant, Paul J. Bachemin, in the full sum of three hundred sixty-nine and 15-100 dollars ($369.15), with legal interest from November 6, 1923, until paid, and all costs.

JANVIER, J. dissenting. I readily concede that due to the coincidence that the same surety signed both bonds involved in this matter, and that the contractor defaulted in both cases, substantial justice is done to all parties by the decree rendered by the majority of the court. I believe, however, that the holding of the majority is not in accord with the jurisprudence of the state, and establishes a principal which, in other cases, will produce results not contemplated nor desired.

I agree that it is not necessary for a materialman to follow his material and to show that every item furnished by him went into the building and that, under the jurisprudence, all that is required of him is to show that it was delivered "on the job." I believe that the material for these two jobs should have been ordered and billed separately, and if it had been, all that the materialman would have been required to do would be to show that each order had been delivered at or on the property on which the respective building was being erected. Here, however, there are two separate contracts, two separate bonds and two separate pieces of real estate, and the material chargeable to each of the contracts should have been billed against that contract and not against all the work that was going on in that square.

Suppose one of the jobs had been completed by the contractor without loss, and the loss on the other had exceeded the amount of the bond on that other contract. Would it be equitable to hold the surety just because it happened to be the same on both contracts, not only for the full amount of the bond on the contract on which the contractor had defaulted, but also for so much of the other bond as might be required to make good the deficiency resulting from the fact that the loss on the other job exceeded the amount of the bond?

Suppose, again, in the case before us, that there had been two different sureties, would it be equitable to allow the material-

man who has furnished the material for both jobs, but who has not been sufficiently alert and diligent in the protection of his interests to bill the orders separately, to require of the sureties to fight out between themselves how much of the bill each of them owes.

In the case before us it appears that there were two contracts and two bonds, and in each case both were recorded in the mortgage office. This recordation is required so that all furnishers of material may have full knowledge as to who is the surety and as to what are the conditions of the contract and the bond. If the materialman involved here had been diligent in the protection of his interests, he would have known that there were two jobs and that, in order to hold the surety on either of the jobs, he should furnish the material for that particular job, and he could not be allowed to claim that, just because he furnished material to the contractor for his general operations, he could select which bond he wanted to charge that material against; or, better still, charge it all against both.

If he cannot trace his material into each building he must at least show that he furnished so much for one building and so much for the other.

Counsel for the materialman concedes that if the two buildings had been on different streets, there would have been a necessity for the materialman to bill each job separately—so much for the job on this street and so much for the job on that one. If, then, it is necessary to separate the bills under those circumstances, where the material must be physically separated, how much more necessary it is to bill it separately in a case like the one before us, where the material may so easily become confused.

We are told that it is not the custom for materialmen to bill supplies against a particular job, but that they bill them against a general open account of the contractor. My answer is that the fact is, on the contrary, that all careful materialmen do bill the material sold against the particular job into which it is expected to go. Of course, the charge is made against the contractor, but the general custom is to enter on the books a separate account for each job. Thus one contractor may, and certainly should, on the books of one materialman, have several different accounts —this one on that job, this one on the other job, etc.

By allowing the material to be furnished as it was here, the surety is in effect told: "You are liable in each case for the full amount of both bonds, and if either contract does not work out profitably, you may be held for the aggregate amount of the bonds."

For these reasons I respectfully dissent.