## MADISON LUMBER CO. v. GLOBE INDEMNITY CO. et al.
### No. 16105.

Court of Appeal of Louisiana. Orleans.
June 10, 1935.

James W. Hopkins, of New Orleans, for appellant Globe Indemnity Co.

Charles J. Rivet, of New Orleans, for appellant Salvador Petrie.

Deutsch & Kerrigan & Burke, of New Orleans, for appellee.

JANVIER, Judge.

Dendinger, Inc., doing business as Madison Lumber Company, and hereafter, for convenience, referred to as the Madison Company, is a furnisher of lumber, building materials, and supplies. John J. Julian is a contractor, and Globe Indemnity Company is a corporation engaged in the business of issuing various kinds of bonds, policies, and insurance contracts.

The Madison Company seeks solidary judgment against Julian and the surety in the sum of $749.59, together with interest and attorney's fees, alleging that to be the balance due for materials furnished by it and used by Julian in the execution of a building contract in which Julian was contractor, Nicholas Schiro was owner, and Globe Indemnity Company surety for Julian. Both defendants deny the correctness of the various charges made for materials alleged to have been delivered, and particularly charge that in addition to the credits shown on the books of the Madison Company as representing amounts paid to it by Julian, the contractor, an additional sum of $471.45 has been paid which has not been properly credited to the account, although, so both defendants allege, the officials of the said Madison Company well knew, when they received the payment of $1,000 out of which the $471.45 referred to was credited to other accounts, that the entire payment of $1,000 represented the proceeds of a sum paid by Mr. Schiro, the owner, to Mr. Julian, the contractor, under the particular building contract out of which this litigation arose.

The surety, by call in warranty, seeks solidary judgment against Julian, the contractor, and also against Salvador Petrie for such amount as it may be condemned to pay to the Madison Company on the main demand, alleging that Petrie, as indemnitor, and Julian executed in its favor, when it wrote the bond, an indemnity agreement under which they agreed to hold it harmless in the event of loss.

Petrie contends that he is not liable as warrantor, but we shall set forth his reasons and our discussion of this question after we have disposed of the principal controversies.

In the district court there was judgment in favor of the Madison Company solidarily against both defendants in the full amount prayed for, and there was judgment on the call in warranty in favor of the surety and against both Julian and Petrie solidarily for the full amount and also for attorneys' fees in the sum of $100. The surety has appealed from the judgment against it, and Petrie has appealed from the judgment rendered against him on the call in warranty.

We first direct our attention to the principal question which is involved in the controversy between the plaintiff and the two defendants on the main demand, i. e., whether or not the Madison Company was within its legal rights in imputing a part of the payment of $1,000 made by Julian, the contractor, to other accounts on which Julian was indebted to it.

When Julian made the payment of $1,000, he used the proceeds of a check which had just previously been given him by Schiro, as a payment under the building contract on which the Globe Indemnity Company was surety, and it is conceded that the Madison Company imputed only $528.55 of that $1,000 to the particular account which was entered on its books as the "new Schiro job" and applied the balance, $471.45, to other accounts on which Julian was indebted to it.

It is not strenuously contended that the officials of the Madison Company did not know the source of this particular payment of $1,-000. In fact, Mr. Dubose, the salesman of the Madison Company, who had sold some of the materials for use in the "new Schiro job," testified as follows:

"Q. Did you know where this money came from that was paid on this job? A. Yes, I did. From the Schiro job.

"Q. Did Mr. Sander know where it came from? A. Yes, he did.

"Q. From where? A. From the new Schiro job, or the second Schiro job you better say.

"Q. You mean the one involved in this law suit? A. Yes sir."

The Mr. Sander mentioned is the credit manager of the Madison Company. He makes no denial of the fact that he knew or, at least, suspected the source of the payment. In fact, when asked whether he knew "that this $1,-

000.00 check came from funds derived from the Schiro job," after first stating that he did not know, he finally said, "I might have assumed it."

However, although practically conceding knowledge of the source of the funds, the Madison Company contends that the imputation to the various accounts was made as the result of an agreement with Julian, the contractor, and it maintains that an imputation so made cannot be set aside whatever may be the effect upon others.

The evidence shows that Mrs. Julian, the wife of the contractor, was authorized to sign checks on the account of her husband, and that it was customary for her to do so. It also appears that when Mr. Schiro paid to Julian the money, out of which the $1,000 was drawn for payment to the Madison Company, Mrs. Julian drew a check to the order of the Madison Company and made a notation on it reading "Schiro job," and that when the officials of the Madison Company noticed that notation they sent the check back and asked that another one be issued without any notation, because they desired to impute part of the payment to various older accounts and did not intend to apply all of it on the "Schiro job."

It is conceded that the notation "Schiro job" referred to the new work out of which this litigation has arisen, and not to the old "Schiro job" which had been completed long previously.

Julian denies that he consented to the application of any of this fund to any other account than the "new Schiro job," but we find it unnecessary to determine whether his version of this phase of the controversy is the true one because we believe it to be well settled that where a materialman has on his books several accounts against the same contractor and receives a payment and knows the source thereof, he cannot impute any part of that payment, even with the consent of the contractor, to any other account than that for which it was originally intended so long as the right or interest of the owner of the building or of the contractor's surety will be adversely affected by such imputation.

This question was interestingly discussed by this court in the matter of Roca v. Caruso, 7 Orl. App. 451, in which this court said: "* * * It is * * * unfair for a furnisher of material, knowingly to receive of a contractor money paid to the latter under one contract, and impute the same to some other account whilst the debt incurred in connection with the contract remains unpaid.

By that simple system any furnisher of materials would have it in his power to prejudice of the rights of one surety or owner to the advantage of another, as his pleasure or interest might suggest. He might even recoup losses due to his own negligence or laches, by imputing such payments to some worthless account, and in due course falling on a new surety or owner for the whole amount of the new account."

In Hortman-Salmen Co. v. Naquin, 12 La. App. 491, 126 So. 453, 455, we discussed at length the question under consideration, and reached the following conclusion: "The correct rule, then, is that, if the creditor in such a case as is presented here has knowledge, actual or constructive, that the funds given him by his debtor were derived from a particular source, the payment in question cannot be imputed in accordance with the article of the code, nor by agreement between debtor and creditor, if such imputation would be prejudicial to the interest of the third person from whom the funds were obtained."

Therefore, since the Madison Company knew that the payment in question represented the proceeds of a payment made by Mr. Schiro, and, since to impute any part of that payment to any other account would plainly work prejudice to the rights of Mr. Schiro, and also to the rights of the surety, it follows that no portion of the said payment may be diverted to any other purpose than to the reduction of the balance due on the Schiro account and this, whether Julian acquiesced in such imputation and, in fact, even though he may have directed that it be made.

Our attention is directed to Hortman-Salmen Co. v. Continental Casualty Co., 170 La. 879, 129 So. 515, 517, in which the Supreme Court held that "the imputation of payment made by the creditor with the express or tacit consent of the debtor is the same as an imputation of payment by the debtor himself," and in which the Supreme Court cited with approval two other cases, to wit, Grand Lodge, etc., v. Murphy Construction Co., 152 La. 123, 92 So. 757 and Thompson & Co. v. Sporl et al., 160 La. 352, 107 So. 135, 138, in the latter of which the court, in referring to the former, said: "As to the manner in which the credits have been imputed by Thompson & Co., the creditor, with the tacit (and even express) consent of Sporl, the debtor, we said in Grand Lodge, etc., v. Murphy Const. Co., 152 La. 123, 92 So. 757, that, 'In general, and except where such imputation would amount to a fraud on the part of

both debtor and creditor, the debtor may always impute the payments as he pleases; and cannot be controlled therein by a surety.' * * * "

It is contended that it is only where the imputation would amount to a fraud that it may be set aside and credit given to that account under which the party, with whom the payment originated, or the surety of the contractor is interested, but a reading of the opinion in Hortman-Salmen Co. v. Continental Casualty Co., supra, shows that there the plaintiff, in other words, the furnisher of material, "did not know the origin of the sources of the funds out of which Walker [the contractor], by his personal check, made the payments, and therefore that plaintiff was not guilty of improper practices in making the imputations." The court further said "in these circumstances, though the imputations operated to the prejudice of defendant, they cannot be disturbed."

We, therefore, conclude that what the Supreme Court means is that if the furnisher of materials knows that the payment which it has received was made with funds which originated with a particular owner for whom the contractor had been working, it amounts to a legal fraud on the rights of that owner or on the rights of the surety to permit the diversion of any part of that payment to any other account than that in which the owner or the surety is interested. The word "fraud" as used by the Supreme Court does not mean deliberate attempt to rob, but merely means prejudice to the rights of other parties with knowledge on the part of the furnisher of material that the rights of other parties have been or will be prejudiced.

█ The Madison Company also contends that, at least, to the extent of $287.19, the surety cannot complain that the imputation was improperly made because that sum was imputed to an account carried on defendant's books as "the old Schiro job," on which the same surety had signed the contractor's bond. The theory on which this contention is based is that if the credit of this amount made to the "old Schiro job" be canceled and that sum be placed to the credit of the "new Schiro job," with which we are now concerned, the surety's position to that extent will not be altered because its liability under the old bond will be increased by that amount.

But that argument overlooks the important fact that there may be other defenses which may be urged if claim is made under the old bond. We cannot in this case assume that there is liability under the old bond and, in fact, cannot at this time and in this litigation consider that other matter at all. If claim is made under that bond, the surety may or may not be required to make payment; but we cannot consider that question here. Liability under each bond must be determined without reference to any other possible liability and all credits due under each account must be given to that particular account.

In Clifford F. Favrot Supply Co. v. Bachemin and United States Fidelity & Guaranty Co., which we first considered and discussed in 11 La. App. 62, 120 So. 723, there were presented two claims under two building contract bonds. In the two cases the contractor was the same, the furnisher of material was the same, the owner was the same, and the surety was the same, and this court, in a majority opinion, held that under such circumstances it was not necessary that the furnisher of material prove just what material had been delivered under each of the contracts, but since it proved that all of the material had been delivered under both contracts, it could recover from the surety for all amounts due. Our Supreme Court granted a writ of certiorari and held that, even under those circumstances, full proof under each bond must be made or recovery could not be had under either. Clifford F. Favrot Supply Co. v. United States Fidelity & Guaranty Co., 168 La. 841, 123 So. 593. In other words, that each case of this kind must stand upon its own facts and that credits due under one cannot be taken advantage of in another.

█ Another contention made by plaintiff is that there was credited to this account some $350 which did not originate with Mr. Schiro, but which found its way to the plaintiff through the contractor, having originated with other owners for whom the contractor did work, and that since this account received credit therefor, plaintiff was justified in imputing $350 to other accounts out of the fund which originated with Mr. Schiro and with which we are now concerned.

It may have been to the interest of those other owners who produced the $350 in question to have insisted that their accounts be credited with that amount. It may have been their duty to protest. Apparently they have not done so and, since they have not, the materialman cannot now be heard to say that those credits were improperly made to this account. The payments were made by the respective owners to Julian. He made the payments to the furnisher of material. The furnisher of materials made the imputations either without knowledge on its part as

to the source of the funds, or without prejudice to those persons from whom the funds were originally derived. In such case the imputations made with the consent of the contractor cannot be disturbed. The principle set forth in Hortman-Salmen Co. v. Continental Casualty Co., Grand Lodge, etc., v. Murphy Const. Co., and in Thompson & Co. v. Sporl, supra, applies. The materialman cannot now be heard to say that since he gave to the surety something to which it was not entitled he will not take away from the surety something to which it is entitled.

■ Petrie, called in warranty by Globe Indemnity Company, joins with the defendant in resisting the claim of plaintiff, and also contends that, regardless of whether the surety is liable to the Madison Company, he, Petrie, cannot be held on the call in warranty. He contends that the surety, in its call, has not alleged facts and, in its proof, has not offered evidence sufficient to hold him liable.

He charges that under the terms of the contract which he signed when the surety executed the bond, the surety was required, before proceeding against him, to exhaust its remedies against Julian, the principal on the bond.

He relies on those provisions in the agreement under which the surety became subrogated to the rights of the contractor, and he contends that when Julian, the contractor, failed to make payment to the Madison Company all of Julian's rights, privileges, and properties as principal under his contract with Schiro, and all deferred payments and retained percentages, etc., "became the property of Globe (the surety)," and he asserts that it was the duty of the surety to first show that it proceeded to exercise these rights before it should be permitted to proceed against him as warrantor or indemnitor. As supporting this contention, he relies upon Bain v. Arthur, 129 La. 143, 55 So. 743, in which the Supreme Court said: "A contract of indemnity is not one to pay as in case of suretyship, but one to make good a future loss or damage. It seems to be well settled that the loss or damage must be incurred before the party indemnified is entitled to recover."

But we believe that we find a fundamental distinction between that case and this, in that here, Petrie, to whom we have referred as warrantor, expressly made himself solidarily liable with Julian for any loss the surety might suffer. It has been held that in such case the guarantor or warrantor is not entitled to the benefits of the pleas of division and discussion.

In Hibernia Bank & Trust Co. v. Succession of Cancienne, 140 La. 969, 74 So. 267, 268, L. R. A. 1917D, 402 the Supreme Court said (syllabus): "If the guarantor expressly declares in the instrument of guaranty that he binds himself in solido with the principal debtor as if the obligation were contracted by him, the guarantor, in person, the latter is not entitled to the plea of discussion or to require the guarantee to proceed against the principal debtor before proceeding against him, the guarantor."

We, therefore, believe that under the facts shown Petrie is liable to the surety for such amount as it may be compelled to pay as a result of its having issued the bond.

There are two other contentions of minor importance; one involving $1.85 for items delivered after the acceptance of the work, and one involving $36.25 for interest charges. The materials delivered after the acceptance of the work should not have been charged under the contract, and this amount, $1.85, should be deducted. We do not find sufficient proof to authorize the deduction of the charge of $36.25 for interest.

We, therefore, conclude that there should be deducted from the amount of the claim which is $749.59, the $1.85 to which we have referred and the amount which was improperly imputed to other accounts, to-wit, $471.-45, which leaves a balance due of $276.29, for which Julian and the surety are liable to plaintiff and for which, in turn, Petrie is liable to the surety. Julian has not appealed from the judgment and, therefore, the amendment which we shall make cannot affect him.

Petrie is also liable to the surety for a reasonable attorney's fee, and we have no reason to feel that the amount allowed below, $100, is not correct.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by the reduction of the principal amount thereof as against the Globe Indemnity Company to $276.29, and by the reduction of the amount of the judgment in warranty as against Salvador Petrie to $276.-29, and that, as thus amended, it be, and it is, affirmed in all other particulars; plaintiff to pay the costs of appeal only.

Amended and affirmed.